# CHARLESTON.

WANDA MALONE v. MONONGAHELA VALLEY TRACTION COMPANY, *alias* MONONGAHELA POWER & RAILWAY COMPANY

(No. 5914)

Submitted October 25, 1927.   Decided November 1, 1927.

1. DAMAGES—NEGLIGENCE—*Physical Pain, Suffering and Distress of Mind Suffered by Woman Who is Caused to Miscarry and*

*Give Birth to Still-Born Child Are Proper Elements on Which to Base Damages in Action for Injuries Negligently Inflicted Upon Her Which Caused Miscarriage. But Mental Anguish and Suffering Because of Injuries to, and Loss of, the Child Cannot be Considered in Arriving at Damages to Compensate Her for Personal Injuries.*

Physical pain, suffering and distress of mind suffered by a woman who is caused to miscarry and give birth to a still-born child are proper elements on which to base damages in an action for injuries negligently inflicted upon her which caused her miscarriage. But mental anguish and suffering because of injuries to, and the loss of, the child cannot be considered in arriving at damages to compensate her for her personal injuries. (p. 423.)

2. ARGUMENT—*Argument of Counsel to Jury Not Excepted to, and in no Way Made Part of Record, Will Not be Considered in Appellate Court.*

Argument of counsel to the jury not excepted to, and in no way made a part of the record, will not be considered in the appellate court. (p. 426.)

3. DAMAGES—*Averments, in Declaration for Damages for Personal Injuries Received Through Negligence of Defendant, of Higher Degree of Duty on Part of Defendant Than Law Imposes, do Not Vitiate the Declaration.*

Averments, in a declaration for damages for personal injuries received through negligence of defendant, of a higher degree of duty on the part of defendant than the law imposes, do not vitiate the declaration. (p. 426.)

Error to Circuit Court, Marion County.

Action by Wanda Malone against Monongahela Valley Traction Company, alias Monongahela Power & Railway Company. Verdict for plaintiff, defendant brings error.

*Reversed; verdict set aside; new trial.*

*Shaw & Shaw,* for defendant in error.

*Ernest R. Bell* and *Henry S. Lively,* for plaintiff in error.

LIVELY, JUDGE:

Defendant below, Monongahela Valley Traction Company, prosecutes error to a judgment rendered November 8th, 1926,

against it for $4,500.00, in favor of plaintiff, Wanda Malone, for personal injuries received by her while alighting from defendant's traction car operated on its street railway.

The amended declaration in substance charges that she entered defendant's car standing at or near the intersection of Main Street and Cleveland Avenue, in the city of Fairmont, for the purpose of placing her infant child therein accompanied by a domestic in her household, both to be carried as passengers to another part of the city; that she entered the car from the rear platform and informed the conductor, standing on the rear platform, that she would not be a passenger thereon, and that she would alight therefrom when she had assisted her infant child on the car; that she then proceeded to alight from the car; that defendant then and there owed her the highest degree of care not to injure plaintiff, and not to put the car in motion while she was alighting therefrom; that the duty was breached by defendant suddenly starting its car at a high rate of speed down a grade before she had time to get off, and while she was alighting, whereby she was suddenly jerked and thrown from the car to the pavement causing various personal injuries, named; that at the time, she was a married woman and pregnant, soon to become a mother, and the injuries then sustained caused the death of her unborn child, and she was thereby caused to give birth to the child still-born, and plaintiff was thereby caused to suffer the loss of the child and the further great injury from giving birth thereto, in consequence of all of which she become sick, sore, disabled from household duties, her health impaired, to her damage of $10,000.00. A demurrer being overruled, defendant pleaded the general issue and demanded a bill of particulars of the damages sustained. The bill of particulars stated divers injuries to various portions of the body, to her nervous system, and reproductive organs; divers injuries to the unborn child which caused its death; pain and mental anguish caused to plaintiff by said injuries to said unborn child; pain, anguish and suffering caused by being delivered of the dead child; "grief and disappointment at the loss of the child and deprivation of the enjoyment of said

child''; and permanent injury to health and physical capacity to perform her usual duties.

Plaintiff's version of the accident is that she knew the conductor and he knew her, and that she entered the car from the left rear steps and told the conductor that she was not going on the car and to put her child and the domestic (a country girl about 16 years old), then accompanying her, off at a certain stop. She then entered the car and delivered her infant child to the domestic, and proceeded to go back and out the same way she entered, passing by the conductor standing on the rear platform, while persons were getting on the car from the right rear steps; that she was on the first step down of the car, and about to light when the conductor rang the bell to start. The car suddenly started swiftly with a jerk and she was thrown violently off the car, receiving injuries to her hips, arms, right side, stomach and back; that she fell backwards, at least was on her back when she got up; thence she went to Dr. Criss near by who examined her, and thence after purchasing a steak, she went home on another car. She tells about her injuries and the result and effect after the fall and her condition both before and after the still-born child was born about three weeks thereafter. It would serve no useful purpose to detail them here. She is contradicted by many witnesses as to the impairment of her health and physical incapacities after the accident. It appears that after the child was born, she frequently attended the dance halls and danced, on some occasions with the champion dancer of the ''Charleston''. It further appears that she has since given birth to another child which was normal. Dr. Criss says that plaintiff came to his office February 1st, 1922, (the date of the accident), and he casually examined her; that she was seven and one-half months in pregnancy and was pale and haggard; that she complained of injuries and pain in the region of the abdomen, about her extremities, back and arms; that he made no complete examination at the time; that he saw her on the 13th of February when her condition was not good, and he did not find any foetal heart beat; that he attended her on February 22nd when she was in labor and was delivered of the still-born child which had been dead two or

three weeks; that he was of the opinion that the death of the child was caused by the fall.

Virginia Moon, the domestic, who was with plaintiff at the time, corroborates her in the main particulars. She says that they entered the. car as detailed by plaintiff, that the conductor was standing on the rear platform, that plaintiff was carrying her infant child and left it with her about the middle of the car, having previously told the conductor that she would not be a passenger on that trip, and to put her (the witness) off at Mason Street, that plaintiff then proceeded to leave the car, and when she reached the door turned around and asked her if she had car fare; that she did not see the accident, but her attention was called to plaintiff as she lay in the street by exclamation from passengers that a lady had been thrown from the car. She detailed the sufferings of plaintiff after the accident.

The conductor says that while the car was standing at the turn on Cleveland Avenue to take on passengers, plaintiff and Virginia Moon, the domestic, approached the rear left entrance of the car, but that plaintiff did not enter the car; that she told him where to put the child and its companion off, and informed him that she would not be a passenger; that the child being carried was delivered to Virginia Moon who then entered the car as a passenger; that he then turned to assist passengers who were entering by the right hand steps and as soon as they entered he belled the motorman to start the car, his face being turned away from the left rear entrance; that the car started off smoothly in the customary way by releasing the air and did not start with a jerk; that after the conversation with the plaintiff, she turned around and started away from the car back towards the Woolen Mills and he did not observe her again until he heard some one say, "wait a minute," which was after he had belled the motorman to start and the car was in motion; he then observed plaintiff stepping off of the car to the street having hold of the rear hand-hold with her left hand, and that she fell backwards on the pavement; that Bosserman, the motorman on a car which was following his car, stopped his car a few feet behind the place of accident, and assisted her to get up and

she walked rapidly back up the street. Bosserman, motorman, on the car following, corroborates the conductor as to the manner in which the accident occurred. Some of the witnesses say that the plaintiff approached the car the second time after she had accompanied the domestic and the baby to the car and a number of the neighbors and friends of the plaintiff testified that she told them the next day that she had approached the car the second time for the purpose of ascertaining if Virginia Moon had car fare or for the purpose of delivering the key to the residence, and that she had fallen off the car. There is other evidence tending to show that plaintiff either actually entered the car or was standing on the platform. One of the witnesses, who was a passenger, observed a lady standing on the platform at the time she, the witness, entered. While there is conflict in the evidence as to whether plaintiff made two trips to the car for the purpose above indicated, it is quite evident that she was on the step of the car at the time it started down the grade and the testimony is to the effect that the car started without a jerk. Plaintiff says she was in the car but once and that the conductor saw her as she came out of the car onto the platform and knew that she was alighting from the car when he belled the motorman to go ahead. Upon this conflicting evidence it is argued that plaintiff was guilty of contributory negligence as a matter of law and that the peremptory instruction to find for the defendant should have been given. Defendant's counsel points to the fact that the plaintiff fell on her back with her head in the direction in which the car was going, and that this physical fact taken in connection with the claimed preponderance of evidence upon the part of the defendant as to how the accident occurred, namely, that she stepped off of the car while in motion, would impel a holding that she was guilty of contributory negligence and the case should be taken from the jury on that ground. It is well settled that mere numerical number of witnesses is not controlling. The jury which observed the witnesses and their manner of testifying is not controlled in finding a fact by the mere preponderance of witnesses in number, nor can we say because the plaintiff fell with her head in the direction that the car was

moving, that the case should be taken from the jury.    She
was injured on the hips, arms and in the abdomen as well as
having received injuries to her back, and the jury may well
have concluded that her efforts to save herself from a fall
may have thrown her in the position shown.    A woman in
the seventh month of pregnancy would not likely fall from a
moving car and light with the same grace and precision as
that of a high diver.    The trial court, an able and learned
judge with much experience, refused to give the peremptory
instruction and refused to set aside the verdict on that ground,
and under the testimony and circumstances we cannot say,
as a matter of law, that plaintiff is precluded from recovery
because of contributory negligence.    Where there is a conflict
in the evidence, generally the question of contributory negli-
gence is a mixed question of law and fact and is properly
submitted to the jury.

Another point of error is that the jury was instructed to
take into consideration in arriving at its verdict an improper
basis of damage, namely, the resultant mental suffering and
anguish to her occasioned by reason of the death and the loss
of the child.    By plaintiff's instruction No. 3 the jury was
told in substance that if they believed from the evidence and
circumstances that defendant was negligent in starting the
car while plaintiff was attempting to alight therefrom and that
she was not guilty of contributory negligence and that the
injuries received by the fall was the cause of the death of
the unborn child, then they were told that defendant was
liable not only ''for her personal injuries then, there and
thereby sustained, if any, and the pain and mental anguish
which the plaintiff then, there and thereby suffered as a
result, and as a result thereof suffered, if any, but defendant
is also liable to the plaintiff for the pain, suffering and mental
anguish, if any, the plaintiff sustained by reason of the in-
juries to, and for the death of said child, and for the resultant
pain and mental anguish, if any, suffered by the plaintiff
by the reason of the loss of said child'', and that they should
compensate her for the injuries and the loss she thereby sus-
tained.    The instruction at length detailed the facts, as
viewed from the standpoint of the plaintiff, including her

pregnancy, and tells the jury if they find those facts to be as detailed and that defendant negligently started the car while she was attempting to alight therefrom, and that she was not guilty of contributory negligence, and that the injuries received caused the death and premature delivery of the child, then the jury is instructed that the defendant is liable to the plaintiff not only for her personal injuries received thereby and the pain and mental anguish to her suffered as a result thereof, but is also liable for the pain, suffering and mental anguish the plaintiff sustained by the reason of injuries to and for the death of the child and her pain and mental anguish by reason of its loss. All the elements of damage are contained in the first proposition namely, recovery for the personal injuries, (the injuries to her from the miscarriage were personal), and the pain and anguish which she suffered as a result thereof; and it was confusing to the jury to add the second part of the instruction above detailed. A careful and analytic inspection of the instruction would impel a conclusion that the jury was warranted in finding damages for the loss of the child. The meaning of that instruction is clarified and accentuated to a degree by the bill of particulars of damages filed by plaintiff which demands compensation for "grief and disappointment at the loss of the child and the deprivation of the enjoyment of said child". We do not think that the law as laid down by the text writers and jurists will justify this instruction. It is true that the damages assessed are not great and the jury might have rendered that verdict to compensate the plaintiff for injuries and mental pain and anguish suffered as a result of those injuries including the mental pain and anguish for the delivery of the stillborn child. Yet we cannot say that they did not include therein the element of damages for the loss of the child and the loss of the enjoyment of that child.

Where injuries negligently inflicted upon a pregnant woman produce a miscarriage, she is entitled to recover damages which will compensate her not only for the personal injuries, but for the mental and physical suffering and any impairment of her health occasioned by the miscarriage, as a proper element of damages insofar as it is a part of her per-

sonal injuries.  *Prescott* v. *Robinson,* 74 N. H. 460; 8 R. C. L.
p. 471, Sec. 35.  She is not entitled to recover for the loss of
the child, or its society or prospective earnings.  *Western
Union* v. *Cooper,* 71 Tex. 507, 9 S. W. 598, 10 Am. St. R. 772;
*Big Sandy & C. Ry.* v. *Blankenship,* 133 Ky. 438, 118 S. W.
316, 19 Anno. Cas. 264, and note; *Sullivan* v. *Old Colony St.
Ry. Co.,* 197 Mass. 512, 83 N. E. 1091, 125 A. S. R. 378;
*Tunnicliffe* v. *Bay Cities Consol. R. Co.,* 102 Mich. 624, 61
N. W. 11, 32 L. R. A. 142, and note.  In *Bovee* v. *Danville,*
53 Vt. 183, the court said: ''Any physical or mental suffer-
ing attending the miscarriage is a part of. it, and a proper
subject for compensation.  But the rule goes no further.
Any injured feelings following the miscarriage, not part of
the pain naturally attending it, are too remote to be consid-
ered an element of damage.  If the plaintiff lamented the
loss of her offspring, such grief involves too much an element
of sentiment to be left to the conjecture and caprice of a jury.
If, like Rachel, she wept for her children and would not be
comforted, a question of continuing damage is presented, too
delicate to be weighed by any scales which the law has yet
invented.''  It is quite generally held that the loss of the
offspring is not a proper element of damage.  *Butler* v. *Man-
hattan Ry. Co.,* 143 N. Y. 417, 26 L. R. A. 46; *Witrak* v.
*Nassau Elec. Ry. Co.,* 65 N. Y. Supp. 257; *Sullivan* v. *Old
Colony Ry. Co.,* 197 Mass. 512; *Prescott* v. *Robinson, supra.*
To the same effect is the text in 1 Joyce on Damages, Sec. 183.
When the injury results in a miscarriage the mother is enti-
tled to damages to compensate her for the pain and suffering
occasioned by the miscarriage, but not for the pain and suffer-
ing occasioned by loss of the child.  17 L. R. A., N. S., 594;
notes to *Prescott* v. *Robinson; Finer* v. *Nichols,* (Mo.) 138
S. W. 889.

Viewed in the light of the principles of law enunciated
in the above citations, it is apparent that the instruction tells
the jury that they may find damages for her personal in-
juries, and the pain and mental anguish resultant therefrom,
but that they should also find damages for pain, suffering and
anguish suffered by her because of the injury to and death of
the child, and for the loss of the child, and therefrom they

could find damages for her injury and loss. While the instruction is not as clear as it might be the jury could reasonably conclude that the loss of the child was a proper element to be considered in arriving at damages commensurate to reimburse her for such loss. For this error the judgment will be reversed, the verdict set aside and a new trial awarded. In the record is found what purports to be a stenographic report of the closing argument of the plaintiff's counsel to the jury, certified to by the official stenographer, in which counsel construed instruction No. 3, above discussed, as warranting the jury to find damages for the loss of the child, in which argument such expressions were found as, "Now (at this time), she (the still-born child), would have been about four years old. Do you think it would have been any comfort to this mother to have those little arms and hands around her now, or toddling by her side? Has she lost anything?" No exception appears to have been made to this argument, nor do we find that the stenographer's report of it was made a part of the record. Not being a part of the record we cannot consider it. It is not a part of the case in this Court.

Error is based on the refusal to sustain defendant's demurrer to the amended declaration. The argument is that the duty alleged as owing from defendant to plaintiff was to exercise "the highest degree of care which human foresight is capable, not to injure plaintiff while she was on said passenger car and while she was endeavoring to alight therefrom". The declaration charges that plaintiff entered the car for the purpose of placing her infant child and domestic thereon as passengers, and is based on the theory that she was an invitee when she entered and later informed the conductor as she retired therefrom that she would take the next or a later car. That a higher degree of care not to injure plaintiff was charged than the fact alleged warranted, will not make the declaration demurrable. The degree of care charged is a conclusion of law which the facts charged did not warrant. We think the duty not to injure her and the breach thereof is sufficiently charged. *Bice v. Wheeling Elec. Co.*, 62 W. Va. 685; *Lawrence v. Hyde*, 77 W. Va. 639. See Chap. 125, Code, Sec. 29. The court took the view as the trial developed that ordinary

and reasonable care was due to her, and not the highest degree of care, and the jury was so instructed. The demurrer is general and was properly overruled.

*Reversed; verdict set aside; new trial.*