17642

A. R. HALL, as Temporary Administrator of the Estate of Ruth Elizabeth Hall, Respondent, v. C. W. MURPHY, Appellant

(113 S. E. (2d) 790)

258

*Messrs. Francis R. Fant, Rufus Fant* and *William L. Fant,* all of Anderson, *for Appellant,*

*Messrs. G. Ross Anderson,* of Anderson, *Gary D. Brown,* of Abbeville, and *Luke N. Brown, Jr.,* of Ridgeland, *for Respondent,*

April 13, 1960.

OXNER, Justice.

These two actions grew out of a collision between an automobile and a bus which occurred in Union County on

April 21, 1959. It is claimed that as result of injuries sustained, a passenger riding in the automobile prematurely gave birth to a child, Ruth Elizabeth Hall, who lived only four hours, and that the child's death resulted from injuries sustained in the collision. Neither complaint discloses how far the mother was advanced in pregnancy but it seems to be assumed that the child was viable. Alleging that the injuries were due to the negligence and recklessness of the driver of the automobile, the first action named in the title was brought under the survival statute (Section 10-209 of the 1952 Code) to recover damages for alleged "pain and agony" suffered by the child during the brief period of her life. The second action was brought for the benefit of the parents to recover damages for her alleged wrongful death (Section 10-1951 *et seq.* of the 1952 Code). The venue was laid in Anderson County where the defendant resided. Each case is here on appeal by defendant from an order overruling a demurrer to the complaint. Although there are separate appeals which were separately argued, the fundmental question involved in the two cases is the same and we shall dispose of them in one opinion.

The test of the right of an administrator to maintain an action for alleged wrongful death is whether deceased could have maintained an action for the injury had he survived. *Price v. Richmond & Danville Railroad Company,* 33 S. C. 556, 12 S. E. 413. So the decisive question in each of these cases is whether a child who, while viable and capable of existing independently of its mother, suffers a prenatal injury through the alleged negligence of another, may after its birth maintain a cause of action against such other for damages on account of the injury sustained.

In *West v. McCoy,* 233 S. C. 369, 105 S. E. (2d) 88, 91, we held that an action would not lie for the alleged wrongful death of an unborn baby whose mother suffered a miscarriage after five and a half months of pregnancy. But we left open the precise question now presented. It was there stated: "We are * * * not concerned here with

whether an action may be maintained by a child injured while *En Ventre Sa Mére* and born alive, and intimate no opinion thereabout, but where the mother suffered a miscarriage after approximately five and one-half months of pregnancy."

*Dietrich v. Inhabitants of Northhampton,* 138 Mass. 14, decided in 1884, appears to have been the first case either in England or the United States to pass upon the right of an unborn child to recover damages for a tort. In that case the mother slipped and fell when she was four or five months advanced in pregnancy. As a result, the child was born prematurely, and lived only fifteen minutes. The Court held that a cause of action could not be maintained for its alleged wrongful death.

The *Dietrich case* was followed in 1900 by the Illinois Supreme Court, one Justice dissenting. *Allaire v. St. Luke's Hospital,* 184 Ill. 359, 56 N. E. 638, 48 L. R. A. 225. There then came decisions from about nine other jurisdictions holding that there could be no recovery for prenatal injuries. Among them were: *Buel v. United Railways Co.,* 1913, 248 Mo. 126, 154 S. W. 71, 45 L. R. A., N. S., 625; *Drobner v. Peters,* 1921, 232 N. Y. 220, 133 N. E. 567, 20 A. L. R. 1503.

In 1949, a trend away from the *Dietrich case* began. *Williams v. Marion Rapid Transit, Inc.,* 152 Ohio St. 114, 87 N. E. (2d) 334, 10 A. L. R. (2d) 1051; *Verkennes v. Corniea,* 229 Minn. 365, 38 N. W. (2d) 838, 10 A. L. R. (2d) 634. This trend has continued. Among the more recent cases permitting recovery are: *Damasiewicz v. Gorsuch,* 1951, 197 Md. 417, 79 A. (2d) 550; *Tucker v. Howard L. Carmichael & Sons, Inc.,* 1951, 208 Ga. 201, 65 S. E. (2d) 909; *Rainey v. Horn,* 1954, 221 Miss. 269, 72 So (2d) 434; *Mallison v. Pomeroy,* 1955, 205 Or. 690, 291 P. (2d) 225; *Prates v. Sears Roebuck & Co.,* 1955, 19 Conn. Sup. 487, 118 A. (2d) 633; *Mitchell v. Couch,* Ky. 1955, 285 S. W. (2d) 901; *Poliquin v. MacDonald,* 1957, 101 N. H. 104, 135 A. (2d) 249.

Other decisions on the right to recover for prenatal injuries are annotated in 10 A. L. R. (2d) 1059 and 27 A. L. R. (2d) 1256.

Writers who have considered the question have criticized the *Dietrich case* as unsound and illogical and have uniformly urged that a viable child, who survives birth, should be permitted, upon proper proof, to recover for injuries incurred before birth.

It is noteworthy that some of the courts following the *Dietrich case* later overruled their decisions. In 1953, *Buel v. United Railways Co., supra,* 248 Mo. 126, 154 S. W. 71, 45 L. R. A., N. S., 625, was overruled by the Supreme Court of Missouri. *Steggall v. Morris,* 363 Mo. 1224, 258 S. W. (2d) 577. In 1951, the Court of Appeals of New York overruled *Drobner v. Peters, supra,* 232 N. Y. 220, 133 N. E. 567, 20 A. L. R. 1503; *Woods v. Lancet,* 303 N. Y. 349, 102 N. E. (2d) 691, 27 A. L. R. (2d) 1250. In 1953 the Supreme Court of Illinois overruled *Allaire v. St. Luke's Hospital, supra,* 184 Ill. 359, 56 N. E. 638, 45 L. R. A. 225; *Amann v. Faidy,,* 415 Ill. 422, 114 N. E. (2d) 412.

Although Massachusetts still adheres to its decision in the *Dietrich case,* it is significant that when the question was again before it in *Bliss v. Passanesi,* 1950, 326 Mass. 461, 95 N. E. (2d) 206, 207, the Court said: "We do not intimate what our decision would be if the question were presented for the first time."

In *Amann v. Faidy, supra,* 415 Ill. 422, 114 N. E. (2d) 412, 415, Mr. Justice Schaefer in a well considered opinion summarized the reasons underlying the divergent views as follows:

"As they emerge from the many opinions which have now considered the problem, the chief grounds urged in support of the rule denying a viable child a right of action to recover for prenatal injuries have been (1) the lack of precedent; (2) the difficulty of determining the existence of a causal relation between a prenatal injury and the death or the con-

dition of the child and the consequent possibility of fictitious claims; (3) the absence of a duty to the unborn child because it is thought to have no separate being apart from its mother. * * *

"Principal reasons advanced in support of allowing recovery where the injuries occur when the child is viable are: (1) an unborn viable child, being capable of independent physical existence, should be regarded as a separate entity from the mother; (2) the law recognizes the separate existence of an unborn child for the purpose of protecting his property rights and to protect him against criminal conduct; (3) a wrong is inflicted for which there is no remedy unless there is recognition of the legal right of a child to commence life unimpaired by physical or mental defects caused by the negligence of others while it was a viable child *en ventre sa mére;* and (4) lack of precedent should not bar recovery where wrong has been committed."

We think the reasons assigned by the courts for holding that a child after birth may not maintain an action for prenatal injuries are unsound, illogical and unjust. We need not be concerned about lack of precedent. There is now plenty The argument based upon the difficulty of proof of a causal relation between the injury *en ventre sa mere* and the damage which subsequently becomes apparent presents no insurmountable problem. As stated in *Woods v. Lancet, supra,* 303 N. Y. 349, 102 N. E. (2d) 691, 695, 27 A. L. R. (2d) 1250: "The questions of causation, reasonable certainty, etc., which will arise in these cases are no different, in kind, from the ones which have arisen in thousands of other negligence cases decided in this State, in the past." The third ground upon which recovery has been denied is the assumed identity of mother and unborn child, and the consequent absence of any duty to the child. There is no medical or other basis for this assumption. "To hold, as matter of law, that no viable foetus has any separate existence which the law will recognize is for the law to deny a simple and easily demonstrable fact." *Woods v. Lancet, supra.*

We have no difficulty in concluding that a foetus having reached that period of prenatal maturity where it is capable of independent life apart from its mother is a person and if such a child is injured, it may after birth maintain an action for such injuries. A few courts have gone further and held that such an action may be maintained even if the infant had not reached the state of a viable foetus at the time of the injury. *Bennett v. Hymers,* 101 N. H. 483, 147 A. (2d) 108; *Hornbuckle v. Plantation Pipe Line Co.,* 212 Ga. 504, 93 S. E. (2d) 727. This question is not presented and we intimate no opinion thereabout. Our decision is limited to liability for prenatal injuries to a viable child born alive.

Having concluded that had Ruth Elizabeth Hall lived, she could have maintained an action for any prenatal injury caused by defendant's negligence, it follows that the two actions now under consideration could be brought by her administrator.

The order in each case overruling the demurrer is affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.