OREN L. BALDWIN, *as Administrator of the Estate of* MICHAEL ALLEN BALDWIN, *Deceased*

*v.*

JOSEPH BUTCHER, JR., *et al.*

(No. 12930)

Submitted May 11, 1971.          Decided June 22, 1971.

Dissenting Opinion July 2, 1971.

Rehearing Denied November 22, 1971.

*Greene, Ketchum & Baker, Menis E. Ketchum,* for appellant.

*Campbell, Woods, Bagley, Emerson, McNeer & Herndon, C. F. Bagley, R. G. McNeer,* for appellees.

HAYMOND, JUDGE:

The sole question to be determined upon this appeal from the final judgment of the Circuit Court of Cabell County rendered October 24, 1969, which dismissed the action of the plaintiff, Oren L. Baldwin, Administrator of the estate of Michael Allen Baldwin, deceased, a stillborn child, is whether under Sections 5 and 6, Article 7, Chapter 55, Code, 1931, as amended, known as the wrongful death statute of this State, an action may be

maintained for the wrongful death of a viable unborn child which was injured and subsequently stillborn as the result of the negligence of the defendants.

In this action instituted in the Circuit Court of Cabell County, the plaintiff seeks a recovery from the defendants, Joseph Butcher, Jr., Dolores Jones, Willard H. Jones, Johannah Fugitt Ratcliff and William Fugitt, in the amount of $10,000 for the wrongful death of the plaintiff's decedent.

The amended complaint alleges that the plaintiff's decedent, *en ventre sa mere* and viable, was injured on September 14, 1966, when his mother, a guest passenger in a motor vehicle driven by the defendant Johannah Fugitt Ratcliff collided with a motor vehicle driven by the defendant Joseph Butcher, Jr. which caused the plaintiff's decedent's death on September 16, 1966.

In addition to the defense of lack of negligence, the defendant Joseph Butcher, Jr., interposed and relies upon the defense that the amended complaint fails to state a claim against him upon which relief can be granted for the reason that the plaintiff's decedent, whose wrongful death is alleged to have resulted from the injuries sustained, was not a life in being and that the injuries which caused the miscarriage do not give rise to a wrongful death action.

By agreement of the parties, the defendants Johannah Fugitt Ratcliff and William Fugitt were dismissed from this action. The defendants, Dolores Jones and Willard H. Jones, filed a motion to dismiss on the same grounds asserted by the defendant Joseph Butcher, Jr. It was stipulated by the parties that the motion to dismiss should be treated as a motion for judgment on the pleadings. By its final judgment the circuit court, a special judge acting in lieu of the regular judge, sustained the motion to dismiss on the ground that the amended complaint failed to state a claim against the defendants upon which relief could be granted, and dismissed the plaintiff's action and

awarded costs to the defendants, Dolores Jones and Willard H. Jones. From that judgment, this Court granted this appeal upon the application of the plaintiff.

On May 11, 1971, this case was submitted for decision in this Court upon the record and the briefs and the oral argument in behalf of the respective parties.

On September 14, 1966, at the intersection of Seventh Avenue and First Street in the City of Huntington, Cabell County, West Virginia, the defendant, Joseph Butcher, Jr., while driving an automobile owned by the defendants, Dolores Jones and Willard H. Jones, collided with an automobile owned by William Fugitt and driven by Johannah Fugitt Ratcliff. Nancy Baldwin was a guest passenger in the Ratcliff automobile and at the time was pregnant with a viable child. As a result of the collision she was thrown from the vehicle in which she was riding and suffered extensive personal injuries. Two days later, on September 16, 1966, she was delivered of a stillborn child who was named Michael Allen Baldwin whose death, according to the death certificate, was caused by trauma resulting from an automobile accident.

October 13, 1967, the plaintiff, Oren L. Baldwin, was appointed administrator of the personal estate of Michael Allen Baldwin, deceased; and this action was instituted by the plaintiff October 17, 1967.

At common law there was no right of action for damages for injury occasioned by the death of a person by a wrongful act. *Adams* v. *Grogg,* 153 W.Va. 55, 166 S.E.2d 755; *Swope* v. *Keystone Coal and Coke Company,* 78 W.Va. 517, 89 S.E. 284, L.R.A. 1917A 1128. See also *Jackson* v. *Cockill,* 149 W.Va. 78, 138 S.E.2d 710; *Dunsmore* v. *Hartman,* 140 W.Va. 357, 84 S.E.2d 137; 25A C.J.S., *Death,* Section 13. As no right of action for death by a wrongful act existed at common law, the right or cause of action for wrongful death, if maintainable, exists under and by virtue of the provisions of the wrongful death statute of this State, Sections 5 and 6, Article 7, Chapter 55, Code, 1931, as amended, which has been in existence since the

year of the formation of this State and has been amended from time to time principally with respect to the damages recoverable in an action for wrongful death. Section 5 of the statute, to the extent here pertinent, provides that "Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter. * * *."

Though the question for decision has not been considered or decided in this State and is a question of first impression in this jurisdiction, it has been considered and determined in numerous other jurisdictions with various results and in conflicting decisions.

The question was first considered in *Dietrich* v. *Inhabitants of Northampton,* (1884) 138 Mass. 14, 52 Am. Rep. 242, in which the court in an opinion by Justice Holmes, denied recovery on the grounds that there was no precedent for such recovery and that the unborn child was a part of its mother at the time of the injury and that any damage to it which was not too remote to be recovered was recoverable by her. That decision was followed for several years in other jurisdictions. The proposition that an unborn child was a part of its mother was vigorously and persuasively challenged in the dissenting opinion of Justice Boggs in *Allaire* v. *St. Luke's Hospital,* (1900), 184 Ill. 359, 56 N.E. 638, 48 L.R.A. 225, which has been overruled by *Amann* v. *Faidy,* 415 Ill. 422, 114 N.E.2d 412. In the dissent Judge Boggs asserted that a fetus must be regarded as a life distinct from that of its mother when it reaches the prenatal state of viability at which it could survive if then separated from her.

In 1949, the Supreme Court of Minnesota, in *Verkennes* v. *Corniea,* 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634, held that, under the wrongful death statute of that State, the personal representative of an unborn child, viable and capable of separate and independent existence, whose death is caused by the wrongful acts of defendants, may maintain an action for wrongful death in behalf of the next of kin of the deceased child. Since that decision the courts, in a number of jurisdictions in which the question has been considered, have held that under wrongful death statutes, an action may be maintained to recover damages for the wrongful death of a viable unborn child. *Hatala* v. *Markiewicz,* 26 Conn. Sup. 358, 224 A.2d 406; *Gorke* v. *Le Clerc,* 23 Conn. Sup. 256, 181 A.2d 448; *Worgan* v. *Greggo & Ferrara, Inc.,* 50 Del. 258, 128 A.2d 557; *Porter* v. *Lassiter,* 91 Ga. App. 712, 87 S.E.2d 100; *Hale* v. *Manion,* 189 Kan. 143, 368 P.2d 1; *Rice* v. *Rizk,* (Ky.) 453 S.W.2d 732; *Mitchell* v. *Couch,* (Ky.) 285 S.W.2d 901; *State, Use of Odham* v. *Sherman,* 234 Md. 179, 198 A.2d 71; *Rainey* v. *Horn,* 221 Miss. 269, 72 So. 2d 434; *White* v. *Yup,* 85 Nev. 527, 458 P.2d 617; *Poliquin* v. *MacDonald,* 101 N.H. 104, 135 A.2d 249; *Stidam* v. *Ashmore,* 109 Ohio App. 431, 11 Ohio Op. 2d 383, 167 N.E.2d 106; *Fowler* v. *Woodward,* 244 S.C. 608, 138 S.E.2d 42; *Kwaterski* v. *State Farm Mutual Automobile Insurance Company,* 34 Wis.2d 14, 148 N.W.2d. 107; *Gullborg* v. *Rizzo,* (3 Cir.) 331 F.2d 557; *Todd* v. *Sandidge Construction Company,* (4 Cir.) 341 F.2d 75; *Wendt* v. *Lillo,* (D.C.Iowa) 182 F. Supp. 56; *Panagopoulous* v. *Martin,* (S.D.W.Va.) 295 F. Supp. 220. See 15 A.L.R.3d, Annotation, Section 2, page 995.

Other courts, however, which have considered this question, deny recovery for the wrongful death of an unborn child. *Norman* v. *Murphy,* 124 Cal. App. 2d 95, 268 P.2d 178; *Stokes* v. *Liberty Mutual Insurance Company,* (Fla.) 202 So. 2d 794; *Keyes* v. *Construction Service, Inc.,* 340 Mass. 633, 165 N.E.2d 912; *Estate of Powers* v. *City of Troy,* 4 Mich. App. 572, 145 N.W.2d 418; *Drabbels* v. *Skelly Oil Company,* 155 Neb. 17, 50 N.W.2d 229; *Graf* v. *Taggert,* 43 N.J. 303, 204 A.2d 140; *Endresz* v. *Friedberg,* 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901; *In re Estate of Logan,*

4 Misc. 2d 283, 156 N.Y.S.2d 49; *Re Bradley's Estate,* 50 Misc. 2d 72, 269 N.Y.S.2d 657; *Gay v. Thompson,* 266 N.C. 394, 146 S.E.2d 425, 15 A.L.R.3d 983; *Padillow v. Elrod,* (Okla.) 424 P.2d 16; *Marko v. Philadelphia Transportation Company,* 420 Pa. 124, 216 A.2d 502; *Carroll v. Skloff,* 415 Pa. 47, 202 A.2d 9; *Durrett v. Owens,* 212 Tenn. 614, 371 S.W.2d 433; *Lawrence v. Craven Tire Company,* 210 Va. 138, 169 S.E.2d 440. See 15 A.L.R. 3d, Annotation, Section 3, page 999.

The courts in several jurisdictions have held that a child who after birth dies as a result of prenatal injuries may sue through his representative for wrongful death. *Torigian v. Watertown News Company,* 352 Mass. 446, 225 N.E. 2d 926; *Amann v. Faidy,* 415 Ill. 422, 114 N.E.2d 412; *Steggall v. Morris,* 363 Mo. 1224, 258 S.W.2d 577; *Kelly v. Gregory,* 282 App. Div. 542, 125 N.Y.S.2d 696; *Jasinsky v. Potts,* 153 Ohio St. 529, 92 N.E.2d 809; *Hall v. Murphy,* 236 S.C. 257, 113 S.E.2d 790; *Shousha v. Matthews Drivurself Service, Inc.,* 210 Tenn. 384, 358 S.W.2d 471.

In the *Torigian* case the court held that the intestate, though not viable at the time her mother, then about three and one-half months' pregnant, was involved in an automobile accident which was caused by the negligence of the defendant, but who was born prematurely and lived about two and one-half hours, could maintain an action by her administrator for damages for wrongful death.

Many courts also hold that a right of action may be maintained in behalf of an infant who, by the negligence of a defendant, sustains prenatal injuries which continue after the birth of the child. *Hornbuckle v. Plantation Pipe Line Company,* 212 Ga. 504, 93 S.E.2d 727; *Tucker v. Howard L. Carmichael & Sons, Inc.,* 208 Ga. 201, 65 S.E.2d 909; *Daley v. Meier,* 33 Ill. App. 2d 218, 178 N.E.2d 691; *Damasiewicz v. Gorsuch,* 197 Md. 417, 79 A.2d 550; *Keyes v. Construction Service, Inc.,* 340 Mass. 633, 165 N.E.2d 912; *Bennett v. Hymers,* 101 N.H. 483, 147 A.2d 108; *Smith v. Brennan,* 31 N.J. 353, 157 A.2d 497; *Woods v. Lancet,* 303 N.Y. 349, 102 N.E.2d 691, 27 A.L.R.2d 1250; *Williams v. Marion Rapid Transit, Inc.,* 152 Ohio St. 114, 87 N.E.2d 334,

10 A.L.R.2d 1051; *Sinkler* v. *Kneale,* 401 Pa. 267, 164 A.2d 93; SPEISER, RECOVERY FOR WRONGFUL DEATH, Chapter 4, Section 4.29.

As previously indicated, the right to maintain an action for wrongful death exists by virtue of the wrongful death statute, the pertinent provisions of which are quoted earlier in this opinion. In *Richards, Admr.,* v. *Riverside Iron Works,* 56 W.Va. 510, 49 S.E. 437, this Court, in discussing the provisions of Section 5 of the statute said: "The statute gives the right to institute and prosecute the suit. But for our statute, the action could not be maintained." The opinion also contains this language: "The statute is remedial, and should be construed liberally for the purpose of carrying out the legislative intent." In *Wilder* v. *Charleston Transit Company,* 120 W.Va. 319, 197 S.E. 814, 117 A.L.R. 948, this Court, considering the wrongful death statute said: "The policy of the statute is remedial and not punitive." In the opinion in *City of Wheeling ex rel. Carter* v. *American Casualty Company,* 131 W.Va. 584, 48 S.E.2d 404, is this statement: "The statute, being remedial, should be liberally construed." In *Steggall* v. *Morris,* 363 Mo. 1224, 258 S.W.2d 577, the court said that a remedial statute should not be strictly construed even though it changes a common-law rule. In *State, Use of Odham* v. *Sherman,* 234 Md. 179, 198 A.2d 71, the court, referring to Lord Campbell's Act and the Maryland wrongful death statute said: "What is true of Lord Campbell's Act is also true of the statute allowing the child's cause of action to survive and be litigated by an administrator. Both statutes are remedial and designed to close a gap in the preexisting law."

Under the express provisions of the wrongful death statute, in order to maintain an action for wrongful death there must be the death of a person and the death must be caused by such wrongful act, neglect or default as would, if death had not ensued, have entitled the party injured to maintain such action to recover damages for such wrongful death. It is therefore necessary, in the decision of this case, to determine whether a viable

unborn child whose death is caused by the negligence of a defendant is a person within the meaning of the statute. The decisions in the numerous cited cases hold, under the wrongful death statutes in the various jurisdictions modeled after the English Lord Campbell's Act enacted by Parliament in 1846, that an action may be maintained to recover damages for the wrongful death of a viable unborn child, and that a viable unborn child is a person within the meaning of such wrongful death statutes. Among the many cases which hold that a viable unborn child is a person are: *Panagopoulous* v. *Martin,* (S.D.W.Va.) 295 F. Supp. 220; *Todd* v. *Sandidge Construction Company,* (4 Cir.) 341 F.2d 75; *Tucker* v. *Howard L. Carmichael & Sons, Inc.,* 208 Ga. 201, 65 S.E.2d 909; *Mitchell* v. *Couch,* (Ky.) 285 S.W.2d 901; *Damasiewicz* v. *Gorsuch,* 197 Md. 417, 79 A.2d 550; *Verkennes* v. *Corniea,* 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634; *Rainey* v. *Horn,* 221 Miss. 269, 72 So. 2d 434; *Steggall* v. *Morris,* 363 Mo. 1224, 258 S.W.2d 577; *White* v. *Yup,* 85 Nev. 527, 458 P.2d 617; *Jasinsky* v. *Potts,* 153 Ohio St. 529, 92 N.E.2d 809; *Fowler* v. *Woodward,* 244 S.C. 608, 138 S.E.2d 42; *Hall* v. *Murphy,* 236 S.C. 257, 113 S.E.2d 790; *Kwaterski* v. *State Farm Mutual Automobile Insurance Company,* 34 Wis.2d 14, 148 N.W.2d 107.

In the recent and well considered case of *Panagopoulous* v. *Martin,* (S.D.W.Va.) 295 F. Supp. 220, the opinion by Judge Christie contains these pertinent statements: "With respect to the controversy as to whether or not a viable fetus is a 'person' as contemplated by the wrongful death statutes, it is our opinion that recognition of an unborn child as a person entitled to protection from prenatal injuries, Allaire v. St. Luke's Hospital, supra, (dissenting opinion of Judge Boggs), necessarily requires a holding that such an unborn child is also a 'person' when such a question is raised in the context of the wrongful death statute. Stidam v. Ashmore, 109 Ohio App. 431, 167 N.E.2d 106 (1959). Such a conclusion appears not only technically correct in view of the fact that 'biologically speaking' such a child is, in fact, a presently existing person, a living human being, Mitchell v. Couch,

285 S.W.2d 901 (Kentucky, 1955), but it also has the appeal of consistency, a consideration which ought to carry some weight in the making of judicial decisions. * * *. Having once recognized a viable fetus as an individual capable of independent life apart from its mother and having accorded to such individual the status of a distinct being capable of sustaining a legal wrong, we find no difficulty in holding that such a child is a 'person' within the intendment of West Virginia's Wrongful Death Statute."

In *Mitchell* v. *Couch,* (Ky.) 285 S.W.2d 901, the court said: "The most cogent reason, we believe, for holding that a viable unborn child is an entity within the meaning of the general word 'person' is because, biologically speaking, such a child is, in fact, a presently existing person, a living human being. * * *."

In *Rainey* v. *Horn,* 221 Miss. 269, 72 So. 2d 434, the court used this language: "We hold, therefore, that an unborn child, after it reaches the prenatal age of viability when the destruction of the life of its mother does not necessarily mean the end of its life also, and when, if separated from its mother would be so far a matured human being that it would live and grow mentally and physically, is a person; and if such child dies before birth as the result of the negligent act of another, an action may be maintained for its death under the wrongful death statute."

In *Fowler* v. *Woodward,* 244 S.C. 608, 138 S.E.2d 42, the court, in considering a wrongful death statute almost identical with the quoted portion of the wrongful death statute of this State, in the opinion used this language:

"Since a viable child is a *person* before separation from the body of its mother and sonce prenatal injuries tortiously inflicted on such a child are *actionable,* it is apparent that the complaint alleges *such an 'act, neglect or default'* by the defendant, to the injury of the child, as would have entitled the child 'to maintain an action and recover damages in respect thereof * * * if death had not

ensued.' By the very terms of the statute, this is the test of the right of an administrator to maintain an action for wrongful death.

"Some judges have taken the view that if a child should survive a prenatal injury, it could not, before birth, bring an action for damages; therefore, it is urged, such a case does not meet the requirement of the statute in this respect. We disagree."

The last quoted statement conflicts with the statement in the opinion in *Lawrence* v. *Craven Tire Company*, 210 Va. 138, 169 S.E.2d 440, that "We are unwilling to hold that a child *en ventre sa mere* can maintain a common law action for personal injuries." The conclusion reached in that case, which is cited and relied upon by the defendants, is directly contrary to the many cited decisions which hold that the personal representative of a viable unborn child can maintain an action for its wrongful death caused by negligence of a defendant, and, with respect to whether an unborn child is a part of the mother until its birth, is also contrary to the holding of this Court in *Malone* v. *Monongahela Valley Traction Company*, 104 W.Va. 417, 140 S.E. 340, and the holding of the New Jersey court in *Smith* v. *Brennan*, 31 N.J. 353, 157 A.2d 497. For these reasons this Court disagrees with the holding in the *Lawrence* case.

In the opinion in the *Malone* case, concerning the damages recoverable by the mother of a stillborn child, this Court said: "She is not entitled to recover for the loss of the child, * * *. It is quite generally held that the loss of the offspring is not a proper element of damage. * * *. When the injury results in a miscarriage the mother is entitled to damages to compensate her for the pain and suffering occasioned by the miscarriage, but not for the pain and suffering occasioned by loss of the child. * * *."

In the *Smith* case the Court said: "From the foregoing it is clear that medical authorities recognize that before birth an infant is a distinct entity, and that the law recognizes that rights which he will enjoy when born can

be violated before his birth. If the law in cases of negligently inflicted prenatal injuries were to disregard this background and consider an unborn child as part of its mother, then the mother should be able to recover for the pain, suffering, and incapacity of this part of her, just as to any other part. We know of no case allowing such recovery."

Among the decisions which hold that an action may not be maintained for the wrongful death of an unborn child are cases which deny a recovery under statutes which permit recovery for the death of a person "not being a minor", or a "minor person", *Norman* v. *Murphy*, 124 Cal. App. 2d 95, 268 P.2d 178, or for the death of a "minor child", *Stokes* v. *Liberty Mutual Insurance Company*, (Fla.) 202 So. 2d 794, and cases in which the damages recoverable were limited to "pecuniary injury", *Gay* v. *Thompson*, 266 N.C. 394, 146 S.E.2d 425, 15 A.L.R.3d 983, or "pecuniary loss", *Graf* v. *Taggert*, 43 N.J. 303, 204 A.2d 140, or "economic loss", *In re Estate of Logan*, 4 Misc. 2d 283, 156 N.Y.S.2d 49. In the *Gay* and *Graf* cases, the court did not determine whether an unborn child was a person. The wrongful death statute of this state does not impose any of the limitations involved in the cases just cited, but by Section 6 permits the recovery of such damages as a jury may deem fair and just not exceeding $10,000, to be distributed to the parties and in the proportion provided by law for the distribution of personal estate left by persons dying intestate, and also permits damages not to exceed $100,000 for financial and pecuniary loss sustained by the dependent distributees of the decedent, and in addition reasonable funeral expenses and reasonable hospital, medical and other expenses incurred as a result of the wrongful act, neglect or default of the defendant which resulted in death.

The many cases earlier in this opinion which hold that a viable child who after birth dies as a result of prenatal injuries may sue through his representative for wrongful death, and the numerous cases also cited which hold that a right of action may be maintained in behalf of a

child who by the negligence of a defendant sustains injury which continues after the birth of the child, show clearly that the plaintiff's decedent, whose death is alleged to have been caused by the negligence of the defendants, is a person who would, if death had not ensued, have been entitled to maintain an action to recover damages for wrongful death as a result of the wrongful act, neglect, or default of the person who would have been liable for such damages if death had not ensued.

From the foregoing, it is clear that the allegations of the amended complaint satisfy the requirements of the wrongful death statute of this State for the maintenance of an action to recover damages for the wrongful death of the plaintiff's decedent.

In the decision of this case, consideration has been given to the various arguments in support of the cases which hold that an action for damages for the wrongful death of a viable unborn child may be maintained and those which hold that such an action is not maintainable; and such arguments have also been considered and evaluated in the recent cases of *White* v. *Yup,* 85 Nev. 527, 458 P.2d 617; *Kwaterski* v. *State Farm Mutual Automobile Insurance Company,* 34 Wis.2d 14, 148 N.W.2d 107; and *Todd* v. *Sandidge Construction Company,* (4 Cir.) 341 F.2d 75.

Among the arguments that have been advanced in support of the cases which hold that an action for wrongful death is not maintainable are (1) lack of precedent; (2) an unborn child is a part of its mother until birth and has no juridical existence; (3) such action would open the door to fradulent claims the proof of which would be speculative and difficult; and (4) the cause of action for the wrongful death of an unborn viable child should be created by the Legislature instead of being recognized by the courts.

The lack of precedent argument is groundless and contrary to fact for the decisions which permit the maintenance of an action for wrongful death of a viable unborn child now appear to constitute the weight of authority.

As already indicated, the contention that a viable unborn child is a part of the body of the mother and has no juridical existence, is unsound and has been rejected in the decisions of many courts.

The argument that the allowance of such action would open the door to fraud and its proof would be speculative and difficult is immaterial and has no bearing upon the validity of the cause of action. Difficulty and lack of proof are unrelated to and frequently occur in the prosecution of any case in which the existence of a cause of action is unquestioned.

The argument that a cause of action for the wrongful death of a viable unborn child should be created by the Legislature instead of being recognized by the courts is unsound in view of the number of well considered decisions which hold that such child is a person within the meaning of the wrongful death statutes which either create or authorize the survival of a cause of action for such wrongful death. The contention that the Legislature never intended that the wrongful death statute should apply to the wrongful death of a viable unborn child is fallacious and not convincing.

Arguments advanced in support of the decisions which hold that an action may be maintained for the wrongful death of a viable unborn child are:

(1) If a child, injured when a viable fetus as a result of the negligence of another person, has a cause of action when born, as many cases hold, there should be no difference in liability when the death occurs just before or just after the child is born. The force of this argument is clear in the case of twins, one of which is born alive and because of negligent prenatal injuries dies within a few hours, and the other of which because of such injuries is stillborn. The injustice and the patently illogical result of permitting an action for wrongful death in favor of the twin who is born alive but dies within a few hours and

denying such action in behalf of the stillborn twin are self-evident and require no supporting argument.

(2) A viable unborn child is, in fact, a biologically existing person and a living human being, because it has reached such a stage of development that it can presently live outside of the female body as well as within it.

If no right of action is allowed for the wrongful death of a viable unborn child a wrong has been inflicted for which there is no remedy which is contrary to the traditional policy of the common law. It is well established that the mother can not recover damages for the loss of her stillborn child and unless an action in behalf of the child can be maintained no recovery can be had for a tort which is separate and independent of that which caused the injuries of the mother for which she can recover. The incongruity and the injustice of the denial of a right of action for the wrongful death of a viable unborn child are evident in a situation in which a doctor is guilty of negligence in the delivery of the child which caused its death and in the case of a doctor whose negligence permanently injured a child who was born alive and survived. The doctor whose negligence cause the death of the child would be immune from suit but the doctor who negligently injured the child who lived would justly be subject to liability for his negligence.

If no right of action exists in behalf of the unborn child the absurd and illogical result is that the greater the harm the better the chance of immunity and in such situation the tort-feasor, by killing the child instead of merely injuring it, could escape liability for his negligent acts. See *White* v. *Yup,* 85 Nev. 527, 458 P.2d 617 and *Todd* v. *Sandidge Construction Company,* (4 Cir.) 341 F.2d 75.

In the *Todd* case, in which the dissenting judge, after the decision in *Fowler* v. *Woodward,* 244 S.C. 608, 138 S.E. 2d 42, withdrew his dissent, the majority opinion contains this pertinent language: "To balance the right of action upon whether the child, fatally injured by the negligence

of another, is born dead or alive seems not only an artificial demarcation but unjust as well. To illustrate, if the trauma is severe enough to kill the child, then there could be no recovery; but if less serious, allowing the child to survive, there might be recovery. Again, if the fatality was immediate, the suit could not prevail, but if the death was protracted by a few hours, even minutes, beyond birth, the claim could succeed. Practically, it would mean that the graver the harm the better the chance of immunity. Moreover, it allows the act of the tortfeasor to foreclose his own liability—the life of the action would be in his hands. These results have a sound cogency, quite aside from the general reasons justifying the death statutes, for the argument that those deprived of their own by death should not also be deprived of all recompense by the death." The opinion also contains this statement: "Of course a rule fixing survival as the determinant, rather than viability * * *, has the appeal of simplicity. It might aid the judiciary but hardly justice." See also *Hatala* v. *Markiewicz,* 26 Conn. Sup. 358, 224 A.2d 406 for the same statement concerning the determinant.

An unborn child possesses certain rights at common law. This is indicated clearly by this passage from BLACKSTONE's COMMENTARIES, Book 1, Pages 129-130:

"The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation. Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother's womb. * * *. An enfant *en ventre sa mere,* or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use and to take afterwards by such limitation, as if it were then actually born."

In the opinion in *Tucker* v. *Howard L. Carmichael & Sons, Inc.,* 208 Ga. 201, 65 S.E.2d 909, in discussing the above quotation Chief Justice Duckworth used this pertinent language:

"Thus it is seen that Blackstone says that, in contemplation of the common law, life begins when the child is able to stir in the mother's womb. It can have a legacy, can own an estate, and a guardian can be assigned to it. It cannot seriously be denied that the purpose of the common law in allowing the appointment of a guardian for the unborn child is to make available processes of the law for the protection and preservation of the properties belonging to the child. There is nothing in the common law to indicate that it would withhold from such a child its processes for the purpose of protecting and preserving the person as well as the property of such child. It would therefore seem to us to be an unwarranted reflection upon the common law itself to attribute to it a greater concern for the protection of property than for the protection of the person. Whether the recognition of the right of property in the unborn child is founded upon the welfare of the child or of society, each of these is more vitally concerned about the physical impairments of the child itself than about its property. It would therefore be illogical, unrealistic, and unjust—both to the child and to society—for the law to withhold its processes necessary for the protection of the person of an unborn child, while, at the same time, making such processes available for the purpose of protecting its property."

Under the above quoted authorities, and for the reasons stated, this Court holds that under the provisions of Sections 5 and 6, Article 7, Chapter 55, Code, 1931, as amended, the wrongful death statute of this State, an action may be maintained by the personal representative of a viable unborn child for the wrongful death of such child caused by injuries sustained by it while in the womb of its mother resulting from the negligence of the defendant and, upon sufficient proof, such damages as may be

recoverable under the statute may be awarded in such action.

The judgment of the Circuit Court of Cabell County is reversed and set aside and this action is remanded to that court for such further proceedings as may be proper in conformity to the principles enunciated in this opinion.

*Reversed and remanded.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent because I believe the Court's decision in this case is at variance with fundamental legal principles, including constitutional and statutory provisions of this state and with the general tenor of all prior decisions of this Court relating to actions for wrongful death.

"Such parts of the common law, and of the laws of this State as are in force when this article goes into operation, and are not repugnant thereto, *shall be and continue the law of the State until altered or repealed by the legislature.*" (Italics supplied.) Article VIII, Section 21, Constitution of West Virginia. *"The common law of England,* so far as it is not repugnant to the principles of the Constitution of this State, *shall continue in force within the same, except in those respects wherein it was altered by the general assembly of Virginia* before the twentieth day of June, eighteen hundred and sixty-three, *or has been, or shall be, altered by the legislature of this State."* (Italics supplied.) Code, 1931, 2-1-1.

By reason of the constitutional and statutory provisions quoted above, the common law is not to be construed as altered or changed by statute unless the legislative intent to do so "be plainly manifested." *Seagraves* v. *Legg,* 147 W.Va. 331, pt. 4 syl., 127 S.E.2d 605. This Court "is sternly and unmistakably enjoined to leave drastic changes in the common law to the legislative branch of the state government." *Cunningham* v. *The County Court of Wood County,* 148 W.Va. 303, 308, 134 S.E.2d 725, 728. The constitutional

and statutory provisions in question clearly deny to this Court all power or jurisdiction to change the common law. That power, by both constitutional and statutory provisions, is delegated exclusively to the legislature.

Inasmuch as the legislature is given the exclusive power to change the common law, it is important for the Court in this case to be mindful of the additional restriction upon its power, jurisdiction or authority which is embodied in the following language of Article V, Section 1 of the Constitution of West Virginia: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; * * *."

Inasmuch as this case necessarily involves principles which are so basic and fundamental in the governmental structure, I trust that I may be acquitted of a charge of an effort to be dramatic when I refer to the following portion of Article III, Section 20 of the Constitution of West Virginia which, in my opinion, represents an expression of the distilled wisdom of the ages: "Free government and the blessings of liberty can be preserved to any people only by a firm adherence to justice, moderation, temperance, * * *, and by a frequent recurrence to fundamental principles."

The pertinent portions of the wrongful death statutes of this state are as follows:

> "Whenever the death of a *person* shall be caused by wrongful act, neglect, or default, *and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof,* then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, * * *." (Italics supplied.) Code, 1931, 55-7-5, as amended.

> "Every such action shall be brought by and in *the name of the personal representative of such*

*deceased person* who has been duly appointed
* * *, and the amount recovered in every such
action shall be recovered by said personal repre-
sentative and be distributed in accordance here-
with. * * *. In every such action the jury may
award such damages as they deem fair and just,
not exceeding ten thousand dollars, and the
amount recovered shall be distributed to the par-
ties and in the proportion provided by law for the
distribution of personal estate left by persons
dying intestate. * * *." (Italics supplied.) Code,
1931, 55-7-6, as amended.

The following language from the opinion in *Adams* v.
*Grogg,* 153 W.Va. 55, 57, 166 S.E.2d 755, 756, clearly dis-
closes the universal rule that the action for wrongful death
is wholly a creature of statute and that such an action may
be maintained only if authorized by statute:

" 'At the common law, there was no right of
action for damages for injury occasioned by the
death of a person by a wrongful act.' Such was the
language in *Swope v. Keystone Coal and Coke
Co.,* 78 W.Va. 517, 89 S.E. 284, reflecting, without
question, the principle that a right of action did
not survive one's death at common law, even
though such death were caused by a wrongful or
tortious act. See *Jackson v. Cockill,* 149 W.Va. 78,
138 S.E.2d 710; *Dunsmore v. Hartman,* 140 W.Va.
357, 84 S.E.2d 137; 25A C. J. S., Death, Section 13,
the heading of which reads: 'At common law
there is no cause of action for the recovery of
damages for the wrongful death of a human
being.'

"There being no common law right of action
for death by a wrongful act, such action, if main-
tainable, exists only by the grace of the above
quoted statute. To maintain such action the provi-
sions of that statute must be followed. * * *."

That an action for wrongful death may be maintained
only in case of an injury such as would have entitled the
injured person to maintain an action for recovery of
damages for personal injuries if his death had not en-
sued, is recognized in *Hoover's Adm'x* v. *Chesapeake & O.*

*Ry. Co.,* 46 W.Va. 268, 271, 33 S.E. 224, 225, and in the second point of the syllabus and in the body of the opinion in *Wright* v. *Davis,* 132 W.Va. 722, 53 S.E.2d 335.

It is unmistakably clear, therefore, from the statute which makes provision for an action for wrongful death, and from this Court's prior decisions, that the action involved in this case cannot be maintained for the reason there was no "person" who, prior to his death, could have maintained a civil action for recovery of damages for personal injuries sustained by him. Assume that the "viable unborn child" involved in this case had not died until a month after he sustained the personal injuries which are alleged to have been wrongfully caused by the defendants. Could it be asserted with any semblance of justification that, during the one-month interval of time, the "viable unborn child" was a "person" who had a cause of action against the defendants for the personal injuries he had sustained? The obvious, unassailable answer is in the negative. It inevitably follows, therefore, that an action for wrongful death, based wholly on the pertinent statute, cannot be maintained in this case.

I am unable to accept the proposition that a "viable fetus" or a "viable unborn child" is a "person" within the meaning of the pertinent wrongful death statute. It makes no appeal to me to assert that, "biologically speaking" or from a medical viewpoint, the fetus in question was a "person." We are not concerned with the question from a medical or biological viewpoint. The case presents a question of law and not one of medical concept or of biology. From a legal standpoint, it does not satisfy me to assert that the fetus was a "child" merely because it had advanced to the state of "viability" that would have permitted it, in certain unnatural, unusual circumstances, to leave the womb of the mother and to live apart from her. The fact is that, when the accident occurred, the fetus had no life apart from that of its mother. The fact that, from a biological or medical standpoint, the fetus had reached a state of viability signifies to me only that it had a *potential*

of a life independent from that of the mother and therefore a potential, fraught with at least some degree of uncertainty, of being born alive and therefore becoming a "person," enjoying a life and an existence wholly apart from the mother. It is my impression that it often happens that a "viable" fetus does not have the good fortune to be born alive and, therefore, to attain a life wholly independent of that of the mother.

I am astounded by the following assertion of the Court in its opinion: "The argument that a cause of action for the wrongful death of a viable unborn child should be created by the Legislature instead of being recognized by the courts is unsound * * *." The medical or biological concept of a "viable" fetus is, in my opinion, a comparatively recent concept in relation to the date of the enactment of Lord Campbell's Act and its successors in the various states of this country. Our judicial function in this case is to determine what was the intention of the legislative branches of government, in this state and in Virginia, when our wrongful death statutes were enacted so many years ago. More recent biological or medical concepts of "viability" and comparatively recent court decisions authorizing wrongful death actions to be predicated upon the "wrongful death" of a fetus as a "person" cannot properly be considered in determining the legislative intent involved in the original enactment of statutes in this category.

The Court states in its opinion that the question involved in this case was first considered and decided in an opinion written by Justice Holmes in 1884 in *Dietrich* v. *Inhabitants of Northampton,* 138 Mass. 14, 52 Am. Rep. 242. During all the ensuing period of almost a century, the question has been a live one in legal and judical circles with the result that appellate courts throughout the land are now in sharp disagreement. During all that period to the present day, the legislature of this state has not undertaken to resolve the uncertainty by taking the bold, unrealistic step of declaring legislatively that a mere fetus,

viable or otherwise, is a "person" within the meaning of our wrongful death statute. By a labored judicial pronouncement, in a shocking disregard of judicial functions and prerogatives, this Court has now amended and added to a clear statute which has been in existence since the formation of our state.

While persons skilled in the fields of biology and medicine have developed the concept of "viability" of a fetus, I would be interested in knowing how many of such persons would take the additional step of asserting that a "viable unborn child" is a "person," whether considered from a medical or biological standpoint or from the standpoint of the common meaning and acceptation of the word "person." The few physicians with whom I have discussed the question are amazed that any court would regard a "viable unborn child" as a "person."

Some courts hold that wrongful death statutes are remedial and therefore should be liberally construed. Other courts take the view that such statutes are in derogation of the common law and hence should be strictly construed. 25A C.J.S., *Death,* Section 20, page 605; 22 Am. Jur. 2d, *Death,* Section 6, page 610. I readily concede that the statute should be liberally construed in order to effectuate the remedial and beneficent purpose of providing a remedy for recovery of damages resulting from the death of a "person" which has been caused wrongfully. I believe, however, a strict rule of construction should be applied in relation to the question whether the word "person" when used in the statute applies to a mere fetus or to a "viable unborn child." This distinction was recognized and applied in *Whittlesey* v. *City of Seattle,* 94 Wash. 645, 163 P. 193.

It would needlessly lengthen this opinion to cite court decisions stating the divergent views concerning the question whether an action for wrongful death may be predicated upon prenatal death. Cases of this character are listed in Annot. 15 A.L.R.3d 992; 25A C.J.S., *Death,* Section 26 (2), page 625.

In construing and applying a wrongful death statute essentially identical with the pertinent provisions of Code, 1931, 55-7-5, as amended, the Supreme Court of Virginia, in the recent case of *Lawrence, Administrator* v. *Craven Tire Company*, 210 Va. 138, 169 S.E.2d 440, declined to apply the wrongful death statute to a case involving the death of an unborn viable child. In line with reasoning which I have undertaken to express in this dissenting opinion, the Court made the following statement in the opinion in that case:

> "We are unwilling to hold that a child *en ventre sa mere* can maintain a common law action for personal injuries, and it is plain that such a holding would be necessary in order for any right of action to have been transmitted to the present plaintiff."

For reasons stated in this dissenting opinion, I would affirm the judgment of the Circuit Court of Cabell County.