# CHARLESTON.

B. O. SWOPE, ADM'R V. KEYSTONE COAL AND COKE CO.

Submitted September 28, 1915.   Decided June 1, 1916.

1. DEATH—*Actions by Causing Death—Persons Entitled to Benefit.*

   For the death of a boy under fourteen years old, in conse-
   quence of his employment in a coal mine, in violation of the
   statute, Code, 1913, ch. 15H, sec. 26, ser. sec. 485, Barnes' Code,
   ch. 15H, sec. 24, with the consent of the father, express or im-
   plied, there is no right of recovery by the administrator for the
   benefit of the father.  (p. 520).

2. SAME.

   A father's abandonment of his wife and children, sufferance of
   the procurement of a decree of divorce, alimony and custody of
   the children by the wife and avoidance of payment of the alimony
   by flight from the state, constitute the wife his agent for the
   care and custody of the children, and her exposure of one of them
   to danger resulting in his death, is the negligence of the father
   and precludes right of recovery of damages for his benefit.   (p. 525).

3. SAME.

   On the preclusion of the father from right of recovery in such
   case, the mother, brothers and sisters, standing next to him in
   order of benefit under the statute, cannot be substituted for him
   as beneficiaries, so as to allow a recovery by the administrator
   for their benefit.  (p. 521).

4. MASTER AND SERVANT—*Death of Servant—Contributory Negli-
   gence—Minor.*

   Superior intelligence, precociousness and experience on the part
   of a boy employed in violation of a statute and killed in such em-
   ployment, does not bar right of recovery, in the absence of other
   circumstances precluding such right, but proof thereof is ad-
   missible as a circumstance tending to prove contributory negli-
   gence on the part of the boy, if such defense is interposed.   (p. 525).

5. DEATH—*Actions for Causing Death—Instantaneous Death.*

   That a death by wrongful act was instantaneous does not pre-
   clude right of recovery therefor.  (p. 525).

Error to Circuit Court, McDowell County.

Action by B. O. Swope, administrator, against the Key-
stone Coal & Coke Company.  Judgment for plaintiff, and
defendant brings error.

*Reversed and new trial awarded.*
78 W. Va.

*Anderson, Strother, Hughes & Curd* and *Sanders & Crockett* and *Russell S. Ritz,* for plaintiff in error.

*G. W. Howard* and *Cook, Litz & Harman,* for defendant in error.

PÖFFENBARGER, JUDGE:

The administrator of the estate of a boy, aged eleven and one-half years, killed in the defendant's mine, while working therein as an employee, in violation of the statute inhibiting the employment by coal-mine operators, of boys under fourteen years of age, recovered a judgment in this action for the sum of $7,000.00, as damages for injury occasioned by the alleged negligence and wrongful conduct of the defendant. The administrator was appointed and the action brought at the instance of the father of the deceased boy, from whom the mother had obtained an absolute divorce on the 16th day of March, 1911, as well as the award of the care and custody of their four children, including the boy subsequently killed. About two years later, February, 1913, this boy, with the consent of his mother, was employed by the defendant as a trapper, and his death was occasioned in July or August, 1913, by a fall of slate while he was riding on a coal car which, for some reason, struck and knocked down a prop, in consequence of which the slate fell. The father and mother had been separated for about four years, prior to his death, and divorced for a little more than two years. Although the decree of divorce required the father to pay $25.00 per month as alimony, he left the state after the decree and contributed nothing to the support of the wife or the children. The principal defense to the action was a compromise agreement made by the mother and the guardian of two of the children with the defendant, on the theory of lack of right in the father to recover anything, because of his misconduct, by which the defendant agreed to pay them $3,000.00. Contributory negligence on the part of the father was also relied upon as a bar to the action.

The special plea setting up the compromise, as a bar to the action, proceeds upon the theory that the statute, properly construed, denies to the father any right of recovery through

the personal representative, on account of his conduct, abandonment of the boy, refusal of the fatherly care and protection to which he was entitled and establishment of a relation between them, rendering highly improbable any pecuniary benefit to him from the boy's life, had he lived, and substitution of the mother and the sisters to the benefits conferred by the statute. In other words, the interpretation claimed would eliminate the father as effectually as if he were dead, and pass the benefit of the statute over to the mother and sisters. Whether this is the true construction of the statute or not, the plea was bad and the court properly struck it out. The alleged compromise did not include all the beneficiaries. Only the mother and the guardian of two of the children were parties to it. There was a third sister, as the plea itself shows on its face, who was not averred to have been a party to the compromise. If they are entitled to stand in the father's place, the administrator could sue for the benefit of the third and omitted sister.

But the ruling of the trial court is not based upon this defect in the plea. Following the strict letter of the statute, the court held that the father might recover indirectly through the personal representative, notwithstanding his conduct, and also that, he being alive and first in order of benefit under the statute, the mother and sisters could not be substituted or recognized as beneficiaries. Under this view of the meaning of the statute, it not only rejected the plea but also excluded evidence offered to prove the conduct on the part of the father, relied upon to bar his right. An important inquiry in the case, therefore, is the ascertainment of the meaning of the statute.

The material portions of the statute read and provide as follows: "Every such action shall be brought by and in the name of the personal representative of such person; and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate." Section 6, ch. 103. Code, ser. sec. 4410. Under the general statute of distributions, the personal estate goes first to the children of the decedent and their descendants.

If there be none such, then to his father. And, if there be no father, then to his mother, brothers and sisters and their descendants. Secs. 1 and 9 of ch. 78 of the Code, ser. secs. 3901 and 3909. "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default, is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, in every such case the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages." Sec. 5. "In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars." Sec. 6, ch. 103, Code.

The terms of the statute are general, recognizing no exception on any ground. Like the statute of descents and distributions, it gives the benefit of the recovery to such persons as stand in certain relations to the decedent. Indeed, for the purpose of distribution of the funds, when recovered, it adopts the provisions of that statute. The right of action is given in every case in which the deceased would have had a right of action for the injury, if death had not ensued. If, in the case of an injury, death does not ensue, the injured person's right of action is not barred by the negligence of any person except himself. Negligence of a third person is not his and does not amount to contributory negligence. Nevertheless, in the case of the death of a child by wrongful act, the negligence of the father or other person standing in *loco parentis,* contributing to his death, bars the right of action, if the father or other person standing in such relation and guilty of such negligence, is the sole beneficiary. *Dickinson* v. *Colliery Co.,* 71 W. Va. 325. Obviously, a construction working out this result is a departure from the letter of the statute. Tiffany, Death by Wrong. Act, sec. 69. Though a departure, it is sustained by the great weight of authority throughout the country. Many of the statutes of the several states, giving rights of action for death by wrongful act, differ in their terms from ours, but allowance of the defense of contributory negligence on the part of the beneficiary, is always violative of their strict letter. It is ac-

complished by adherence to the spirit and intent of the statute, falling short of the strict letter thereof, and the interpolation of an exception by implication.

No warrant for the further exception claimed here is found in any of the authorities. On the contrary, there is some authority against it. Under the Nebraska statute, the father having precluded himself from right of recovery, by emancipation of his deceased son, before his death, the right of the mother to sue was denied, on the ground that she could not be next of kin while the father lived. *Thompson* v. *Chicago & St. P. Ry. Co.*, 104 Fed. Rep. 845. The court, however, entered upon no extensive inquiry as to her right. Only this conclusion was announced in the following terms: ''It is doubtless true that in a case like this the mother ought to receive the damages which would, but for the desertion and emancipation on the part of the father entitle him to recover, yet the court cannot extend the provision of the statute which limits the recovery to the pecuniary loss sustained by the next of kin only. The father being the only next of kin and having sustained no loss, the motion for a new trial is overruled.'' Many decisions deny right of action to all persons except those designated by the statute. *Sparks* v. *Railway Co.*, 31 Mo. App. 111; *Telegraph Co.* v. *McGill*, 57 Fed. Rep. 699; *Solmon* v. *Rathjens*, 152 Cal. 290; *Railway Co.* v. *Jones*, 45 Fla. 407; *Eureka* v. *Merrifield*, 53 Kan. 794; *Clark* v. *Railway Co.*, 219 Mo. 525; *Harshman* v. *Railway Co.*, 14 N. D. 69; *Haughey* v. *Pittsburg Rys. Co.*, 210 Pa. 367; *Vaughn* v. *Mining Co.*, 126 Fed. Rep. 895; *Railway Co.* v. *Jackson*, 182 Fed. 342. None of these cases deal with the question here raised. Most of them involved only matters of pleading and practice. Under our statute, the personal representative acts for all the beneficiaries and nobody else can sue, wherefore such questions as are disposed of in the greater number of the cases just cited, never arise in our practice.

The statute under consideration differs from that of descents and distributions in subject matter, origin, purpose and effect. The latter merely regulates and modifies a common law right. It deals with property, not a mere right of

action. In effect it passes the property of deceased persons to their nearest relatives in succession. At the common law, there was no right of action for damages for injury occasioned by the death of a person by a wrongful act. The right was first given by an English statute known as Lord Campbell's Act. It created only rights of action in certain persons. The recovery in such an action did not become a part of the estate of the deceased person. The express purpose was compensation to such persons as were pecuniarily injured by death inflicted or caused by wrongful acts. Our first statute on the subject, passed November 9, 1863, was the same in general purpose and effect as the English statute. It provided that the amount recovered in every such action should be for the exclusive benefit of the widow and next of kin, and required the jury to give such damages as they should deem fair and just, not exceeding $5,000.00, with reference to the pecuniary injury resulting from such death to the wife and next of kin. As amended and reenacted, in part, by ch. 105 of the Acts of 1882, it still gives mere rights of action. The recovery is not subject to any debt or liability of the deceased, and goes to his next of kin, not by virtue of the statute of descents and distributions, but by force of the act giving the right of action. The other statute is adopted only as a means of ascertaining the beneficiaries.

By the amendment made in 1882, the following provisions or language of the original statute were struck out: "Shall be for the exclusive benefit of the widow and next of kin, * * * distribution to such widow and next of kin, * * * * * with reference to the pecuniary injury resulting from such death to the wife and next of kin to such deceased person." The phrase "not exceeding five thousand dollars" was amended so as to read "not exceeding ten thousand dollars." And the following was added, "And the amount so recovered shall not be subject to any debts or liabilities of the deceased." Distribution was directed to be made "to the parties and in the proportions" provided by the statute of distributions of personal estate. Every thing found in the present statute, except the enlargement as to beneficiaries, the limitation as to the amount of the recovery

and the exoneration of the recovery from debts and liabilities of the decedent was in the old one. As originally passed, it adopted the statute of descents and distributions as a means of ascertaining the next of kin and required the jury to give such damages as they should deem fair and just. The elimination of the phrase relating to the widow and next of kin and direction of distribution to the parties and in the proportions provided in relation to the distribution of personal estate, enlarged it in respect of the beneficiaries, so as to let in the husband, in case of the death of the wife. In this way, more adequate provision was made for the family of the deceased. Read in its general outlines, the statute, in its original form, had for its principal purpose the support and maintenance of the family of the deceased person. The admission of the husband as a beneficiary was an additional provision for the family. Going to the father, in case of the death of a child and to the husband and children in case of the death of the wife, the recovery became available for family purposes in general; and, on the death of the father or husband, it would go to the children by inheritance. The wife and children are admitted to the benefit of the statute, in this indirect way, when the recovery is for the death of a child without issue, the father living. If the father is dead, they are direct beneficiaries. When he is the direct beneficiary, they are indirect beneficiaries. This incidental benefit is the only element that can be regarded as bringing them within the spirit of the act and making them direct beneficiaries, when he is precluded by his conduct.

But to substitute them, under such circumstances, in furtherance of the spirit of the statute and in disregard of its letter, would be inconsistent with the theory upon which he is precluded, since he would then be an indirect beneficiary and might still profit by his own wrong. In case of the death of any of his children so admitted to the benefit of the statute, he would inherit from them such estate as they might leave, including the money so recovered. It would give a right of recovery in almost every case of the wrongful death of an infant, even though his natural guardian should have caused

it deliberately and with purpose to provide for other members of the family temporarily and for himself ultimately.

Again, while the family relation is included in the purpose of the statute and to some extent made the basis of its provisions, it is not by any means the sole or dominating consideration. It goes far beyond that relation and applies when neither it nor one of dependency exists. However unworthy or undeserving the father may be, he takes the benefit of the statute, unless he has been guilty of conduct contributing to the cause of the death. That he is dissipated, profligate and indifferent to his family obligations to such an extent as utterly to preclude any hope of incidental benefit to the wife and children, would not prevent a recovery by the personal representative for his benefit nor substitute them for him as beneficiaries. Moreover, the recovery may go to a relative that is not a member of the family of the decedent nor a dependent upon the value of his life. A wealthy man may recover for the death of a brother, son or other relative.

The expressed intention of the legislature is to give the recovery to the persons who would have taken it under the statute of distributions, as if it had been obtained by the injured person in his lifetime and made a part of his estate, with the single exception of exoneration from liability for debts. To make the substitution here suggested would extend, not limit, the statute, by construction. Implied exceptions by way of limitation are not infrequent in the interpretation of statutes. Implied extentions of the scope of legislative enactments are rare, because of lack of any firm basis upon which to found them. Ordinarily, such an extension could rest upon nothing more than a surmise or conjecture. Implications are based upon presumptions and, to warrant an addition to the terms of a statute or a contract by way of implication, the presumption of intention to make the instrument operate as it does with the added terms, must be so strong that the contrary thereof cannot reasonably be supposed. The addition suggested here would not necessarily have a basis in the spirit or scheme of the state, for reasons stated. In some respects, it would be a departure therefrom. The gift to the father impliedly excludes all others. To

substitute others by implication would make one implication overthrow another. It would be inconsistent with the theory of the father's exclusion also. In view of these results, the presumption upon which the addition would have to stand cannot be regarded as having the requisite strength.

As the father of the decedent was his natural guardian, he was under a legal, as well as a moral, duty not only to support him, but also to protect him from danger. Though he did not actually place him at dangerous work, in violation of law, his conduct, if such as the offered evidence tends to prove, necessarily brought about that result. He may consistently be regarded as having committed the care of his children to their mother. Presumptively, he gave her cause for a divorce and custody of the children, and afterward refused to contribute anything for their support, even under a decree of the court. He at least permitted her to take his place as custodian of the children, wherefore her negligence in the care of them is imputable to him. She placed her son at dangerous work, as a means of obtaining the sustenance he refused to provide, in disregard of his legal duty. It is not perceived that the method by which he committed the children to her care or his motive in so doing, is important. Omission of duty often constitutes negligence, and an agency may arise out of conduct. He caused her to take his place and act for the children in his stead. That relation makes her negligence his and bars his right under the statute. *Richmond etc. R. Co.* v. *Martin,* 102 Va. 201; *Bellefountaine Ry. Co.* v. *Snyder,* 24 O. St. 670; Beach on Con. Neg. sec. 131.

In our opinion, the evidence excluded by the court should have been admitted.

That the death was instantaneous does not preclude right of recovery. Under such circumstances, it has been allowed in numerous instances.

The boy's superior intelligence, precociousness and experience would not deny right of recovery, if established. His employment in violation of the statute was an act of negligence which alone warrants recovery, if the conduct of the sole beneficiary of the statute has not barred right of recovery, and the decedent was not himself guilty of contributory

negligence. The construction put upon the statute in *Norman* v. *Virginia-Pocahontas Coal Co.*, 68 W. Va. 405, permits such defense, in cases of this kind. As tending to prove contributory negligence on the part of the boy, not to avoid the legal consequence of the violation of the statute, the evidence of his capacity to appreciate and avoid the danger of the employment, is admissible.

In the absence of such contributory negligence, the causal relation between the violation of the statute and the injury, is clear and distinct. Employment in disobedience of the statute is negligence and, *prima facie,* the proximate cause of the injury, however superior the boy may have been. He did not assume the ordinary risks of the employment, not even that of injury by the negligence of fellow servants.

As the evidence will be entirely different on the new trial, if one shall take place, review of the rulings on the instructions is deemed unnecessary. They were governed by the erroneous theory of the case, adopted by the court, and, of course, are wrong in almost every instance.

For the reasons here stated the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and new trial awarded.*