# CHARLESTON.

### JAMES E. JOHNSTON, ADM'R, v. METROPOLITAN LIFE INS. COMPANY.

Submitted October 28, 1919.   Decided November 4, 1919.

1.   INSURANCE—*Recovery Where Beneficiary Murdered Insured.*

   The beneficiary in a policy of life insurance who murders the insured will be denied the right to recover thereon upon grounds of public policy.   (p. 71).

2.   SAME—*Assignment by Beneficiary Who Murdered Insured.*

   Where the beneficiary in a policy of life insurance murders the insured, and subsequently assigns his interest in the policy to another, such assignee will acquire no better right than his assignor, and will not be entitled to recover upon the policy. (p. 71).

3.   SAME—*Liability of Insurer on Murder of Insured by Beneficiary.*

   Where the beneficiary in a life insurance policy murders the insured, the doctrine of public policy will extend no further than to denying to such beneficiary the right to recover.   The liability of the insurance company to pay the fund is not thereby extinguished, and ordinarily a recovery will be allowed upon such policy in the name of the personal representative of the insured for the benefit of his estate.   (p. 72).

4.   DESCENT AND DISTRIBUTION—*Devolution of Property on Murder of Deceased.*

   Under our law prohibiting the forfeiture of estates upon conviction of crime, the estate of one who is murdered will pass by devolution to the person designated by law to take the same, notwithstanding such person may have been guilty of murder in taking the life of the one from whom he inherits.   (p. 73).

5.   INSURANCE—*Recovery by Personal Representative on Murder of Insured by Distributee.*

   The personal representative of one who is murdered may not recover the amount of a policy of insurance on his life, where the murder was committed by the party who is the sole distributee of such insured person.   (p. 74).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Cabell County.

Action by James E. Johnston, administrator, etc., against the

Metropolitan Life Insurance Company.   Judgment in the court of common pleas in favor of defendant, and on writ of error the circuit court reversed, and rendered judgment for plaintiff, and defendant brings error.

*Reversed, and judgment of Common Pleas Court affirmed.*

*Fitzpatrick. Campbell, Brown & Davis,* for plaintiff in error.
*Daugherty & Riggs,* for defendant in error.

RITZ, JUDGE:

The defendant, for the consideration of certain premiums to be regularly paid, issued a policy of insurance by which it agreed to pay to one Frank Pickens the face value of the policy in case he was living at the end of twenty years from the date of issue, or to pay to his beneficiary Susie Pickens, his wife, an equal sum in case of his death before the expiration of said twenty years   The premiums were regularly paid until the time of Pickens' death.   Some years after the issuance of the policy the insured was murdered by his wife, the beneficiary therein. She was convicted of the crime and sentenced to the penitentiary for life.   Shortly after the commission of the murder she assigned all of her right under the policy to D. B. Daugherty and H. W. Shields.   Pickens left no children surviving him, and owed no debts at the time of his death.   The defendant company declined to pay the policy, either to the beneficiary, or to her assignees, or to the administrator of the estate of Pickens, and this suit was brought by the administrator to recover thereon.   The Court of Common Pleas rendered a judgment in favor of the defendant, and upon a writ of error to that judgment the Circuit Court of Cabell County reversed the same and rendered judgment for the plaintiff for the amount of the policy, to review which this writ of error is prosecuted.

That Susie Pickens, the beneficiary, has no right to recover upon this policy of insurance can scarcely be doubted.   The liability of the company became fixed by the death of the insured, and this was brought about by the felonious act of the beneficiary.   It would be monstrous for the courts to lend their aid to anyone for the purpose of enriching himself by the commission of murder, and to entertain suit on behalf of the beneficiary to recover upon this policy of insurance would be doing that

very thing. It is against the policy of our law to reward one for the commission of crime, and whenever the effect of the enforcement of a right which one would otherwise have would be to give him an advantage by reason of his felonious act, the courts will decline to entertain it. This is well established by the authorities. *New York Mutual Life Insurance Company* v. *Armstrong,* 117 U. S. 591; Cooley's Briefs on the Law of Insurance, 3153; 14 R. C. L. p. 1228, title "Insurance," section 409, and authorities there cited. Nor can the assignees of the beneficiary stand on any higher ground than the beneficiary herself. At the time she made the assignment to them she had nothing to transfer. She had voluntarily placed herself in a status which disqualified her to be beneficiary under the policy. Consequently the assignment to Daugherty and Shields was ineffectual to transfer any interest in the fund.

This denial of the right of the beneficiary or her assignees to recover under such circumstances is not, however, based upon lack of liability of the insurer to pay. The policy of insurance is not avoided for such cause by its express terms, and there is no reason why such an exception should be read into it when the interest of other parties is affected. This doctrine of public policy will not be carried by the courts any further than is necessary to prevent resort to them for the purpose of effecting a fraudulent purpose. It is not for the purpose of relieving the insurance company from liability, and if there is any person without fault who has a right to the benefit of the policy the same will be enforced. In other words, there is no condition in the policy avoiding it in case of the murder of the insured, and the liability of the company is just the same where death is the result of murder as where it is produced by any other cause. The only difference is that in case the murderer is the beneficiary named in the policy he is denied recovery, not because the company is not liable, but because he has placed himself in such a position that he cannot invoke the aid of the courts. But does the fact that the beneficiary named in the policy cannot recover discharge the company from liability in all cases? It is very generally held that where the specific beneficiary named in a policy of life insurance dies the policy of insurance nevertheless

remains in force, and recovery may be had thereon by the personal representatives of the insured upon his death for the benefit of his estate. What is the effect when the beneficiary by some act of his puts himself in a position where he cannot invoke the aid of the courts to enforce his claim? He forfeits his right to claim the money to which he would otherwise be entitled. The rule of public policy, as before stated, will not be extended further than is necessary to prevent a felon from reaping benefit from his crime, and it may be said that when by this rule the murderer, who is the beneficiary, is deprived of his right to recover, the doctrine is extended as far as is warranted. This would leave in the hands of the insurer a fund or estate created by the insured. The insurance company is not entitled to it, and the party that the insured desired to have it cannot take it. He forfeited his right to it. What then is the result? Naturally it becomes the property of the estate of the insured, very much in the same way as an estate which is left by will to a particular devisee or legatee passes by the laws of descents and distributions upon the failure of such legatee, and it has been held that where a legatee in a will murders the testator, the legacy provided for him in the will will pass to the heirs of the testator under the statutes of descents and distributions. *Riggs* v. *Palmer,* 115 N. Y. 506, 5 L. R. A. 340. And it is likewise very uniformly held, and it occurs to us upon sound reason, that where the beneficiary in a policy of life insurance is denied the right of recovery upon grounds of public policy, a trust results in favor of the estate of the insured, and ordinarily the personal representative of the insured can maintain a suit to recover the fund for the benefit of that estate. *Schmidt* v. *Northern Life Association,* 112 Iowa 41, 51 L. R. A. 141; *Cleaver* v. *Mutual Reserve Fund Life Association,* L. R. 1 Q. B. 1892; *New York Life Ins. Co.* v. *Davis,* 96 Va. 737, 44 L. R. A. 305; *Supreme Lodge Knights and Ladies of Honor* v. *Menkhausen,* 209 Ill. 277, 65 L. R. A. 508; *Sharpless* v. *Ancient Order of United Workmen,* 135 Minn. 35, L. R. A. 1917 B, 670; *McDonald* v. *Mutual Life Ins. Co.,* 178 Iowa 863, 160 N. W. 289; *Equitable Life Assurance Society* v. *Weightman,* (Okla.) 160 Pac. 629.

In this case, however, the defendant insists that the personal

representative should not be allowed to recover for the reason that such recovery would be for the benefit of the murderess. The insured had no children, and his widow under the law of descents and distributions is the sole distributee of his personal estate. The fact that the courts will not on grounds of public policy permit her to bring suit to recover this fund does not bar her from taking the estate of her deceased husband. Under our law there is no longer corruption of blood or forfeiture of estates upon conviction of crime, and there is no exception in our statutes of descents and distributions precluding one from inheriting in a case like this. The laws governing the devolution of property are an expression of the public policy of the state contained in its constitution and legislative acts, and the courts are not justified in attaching to these acts exceptions or limitations which have not been placed thereon by the law-making bodies. It therefore follows that if the personal representative of the insured in this case is permitted to recover this fund, the beneficiary will accomplish by indirection that which she could not do directly. That the property of one who has been murdered will devolve upon the murderer where such is the course of distribution provided by law seems to be well settled in most of the American states. *McAlister* v. *Fair,* 72 Kansas 533, 3 L. R. A. (N. S.) 726 and note; *Shellenberger* v. *Ransom,* 41 Neb. 631, 25 L. R. A. 564 and note; *Kuhn* v. *Kuhn,* 125 Iowa, 449; *Carpenter's Appeal,* 170 Pa. 203, 29 L. R. A. 145; *Owens* v. *Owens,* 100 N. C. 240; *Ellerson* v. *Westcott,* 148 N. Y. 149; *Deem* v. *Millikin,* 6 Ohio C. C. 357, affirmed on appeal, 53 Ohio State, 668.

Will the courts then allow themselves to be used for the purpose of bringing into existence an estate which will by operation of law devolve on one who because of his conduct is not entitled to it? The administrator has no interest in the subject-matter. It is agreed here that the insured left no debts, and it follows that every dollar of the fund recovered by the administrator in his representative capacity must go to the murdress. The suit is simply in his name for the benefit of the one who feloniously caused the insured's death. The case of *McDonald* v. *Mutual Life Ins. Company,* 178 Iowa 863, 160 N. W. 289, is very much like this case in its facts. In that case the administrator

of the insured brought the suit to recover on the policy of insurance. It appeared that the sole distributees of the insured's estate were her father and mother, and that they had assisted in a criminal operation which produced her death. The court held that the administrator, if such facts were shown, would not be entitled to recover, for it would be for the benefit of those who are by the public policy of the law denied such right. The theory relied upon to defeat recovery is substantially the same as that asserted in the cases of *Dickinson* v. *Colliery Co.,* 71 W. Va. 325, and *Swope* v. *Coal Co.,* 78 W. Va. 517. In those cases the basis of recovery was the wrongful employment of plaintiffs' decedents, they being of an age which made their employment in mines a violation of the law. The liability of the defendant was sustained by the court in each case, but recovery was denied to the administrator, not because the defendant was not liable, but for the sole reason that the father, who in each case would have been sole distributee of any recovery, procured the employment of the minor. His act in securing his minor child to be employed in violation of law created a situation which rendered necessary the denial of a recovery because the party who would receive it had forfeited his right thereto. There was no fault on the part of the one killed, and recovery would have been allowed but for the fact that the person who would take the fund as sole distributee had united with the defendant in the commission of the wrongful act, and the court denied him the right to take advantage of his own wrong. The principle invoked here is the same as the principle involved there. In some of the cases we have above cited permitting a recovery by the administrator of the insured, where the beneficiary had caused the death, it was suggested that part of the fund might go to the beneficiary under the law of descents and distributions, but that was held not to defeat recovery. That may be true where only part of the fund goes to the guilty party. It may be that the courts would not allow the innocent to be deprived of the property to which they are entitled for the sole reason that to enforce their rights would also confer a benefit upon a guilty party. However, that question does not arise here, and we express no opinion thereon. We are of opinion, however, that where the guilty party would take the whole of the recov-

ery in case one is allowed, the policy of our law as effectually denies recovery as it would were the suit brought in the name of the guilty party himself.

It follows from what we have said that the judgment of the Circuit Court will be reversed, and the judgment of the Court of Common Pleas affirmed.

*Reversed, and judgment of common pleas court affirmed.*