420 S.E.2d 567

**Jacqueline WHITE, Administratrix of the Estate of Andi D. White, Plaintiff Below, Appellant,**

v.

**Kevin M. GOSIENE, Defendant Below, Appellee**

**Ted A. White, Intervenor, Appellee.**

No. 20656.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1992.

Decided June 12, 1992.

---

James B. Lees, Jr. and James A. McKowen, Hunt & Wilson, Charleston, for appellant.

Larry A. Winter, Trina L. Leone and Barbara A. Allen, Spilman, Thomas, Battle & Klostermeyer, Charleston, for intervenor.

MILLER, Justice:

This is an appeal by Jacqueline White, administratrix of the estate of her daughter, Andi D. White, from a final order of the Circuit Court of Raleigh County, dated August 13, 1991, which ordered distribution of a wrongful death settlement to Ms. White and to Andi's father, Ted A. White. The trial court ruled that under W.Va. Code, 55–7–6 (1989), and W.Va.Code, 55–7–7 (1989), Mr. and Ms. White were each entitled to one-half of the net proceeds of the settlement. Ms. White argues that the trial court erred in refusing to consider evidence that Mr. White abandoned or deserted Andi when she was a small child as a basis for an unequal distribution of the settlement proceeds.

I.

On or about August 11, 1989, Andi White, then nineteen years old, was killed in an automobile accident. Her parents had divorced when she was two years old. Andi was unmarried, had no children, and died without a will.

Ms. White brought a wrongful death action against Kevin M. Gosiene, the driver of the vehicle in which Andi was riding at the time of the accident. The claim was subsequently settled for $500,000. After payment of expenses and attorney's fees, the sum of $369,164.56 was deposited in escrow for distribution to Andi's beneficiaries.

In June of 1991, the circuit court entered an order ratifying the settlement and naming Mr. and Ms. White as Andi's sole beneficiaries. The circuit court set a hearing for August 2, 1991, to determine the appropriate distribution of the settlement. Mr. White appeared at the hearing, claiming that, as Andi's father, he was entitled to one-half of the net proceeds of the settlement. Ms. White opposed an equal distribution of the settlement, alleging that her ex-husband had abandoned Andi after their divorce and should not, therefore, be entitled to benefit from her death.

By order dated August 13, 1991, the circuit court ruled that our holding in *Arnold v. Turek*, 185 W.Va. 400, 407 S.E.2d 706 (1991), decided one month earlier, required the proceeds to be distributed equally between Andi's parents. The court took no evidence, but permitted Ms. White to vouch the record with a written avowal of testi-

mony. Ms. White appealed this order. Mr. White was allowed to intervene in the proceedings before this Court.[1]

On March 7, 1992, while this case was on appeal to this Court, the legislature enacted amendments to our wrongful death act, which became effective June 5, 1992. The effect of these amendments was raised in oral argument, and we granted the parties additional time to brief the issue.

## II.

■■■ At the time of Andi White's death, the applicable provisions of our wrongful death act were W.Va.Code, 55–7–6 (1989), and W.Va.Code, 55–7–7 (1989). Section 6(b) governs the distribution of damages in a wrongful death action when tried by a jury or by a court without a jury.[2] Section 7 relates to the distribution of a settlement of a wrongful death action and directs the proceeds to be distributed "in the same manner as in the cases tried without a jury."[3]

In Syllabus Point 4 of *Rice v. Ryder*, 184 W.Va. 255, 400 S.E.2d 263 (1990), we recognized:

"West Virginia Code § 55–7–6(b) (1989) directs that damages awarded in an action for wrongful death shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution set forth in W.Va.Code § 42–1–1 *et seq.*"

W.Va.Code, 42–1–1 (1957), relating to descent, provides, in pertinent part:

"When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to his kindred, male and female, in the following course:

\* \* \* \* \* \*

"(c) If there be no child, nor descendant of any child, nor wife, nor husband, then one moiety each to the mother and father[.]"[4]

For purposes of this case, our statute of distribution, W.Va.Code, 42–2–1 (1923), provides that the personal estate of the decedent "shall pass and be distributed to and among the same persons, and in the same proportions, that real estate is directed to descend[.]"[5]

---

1. In the avowal of testimony, Ms. White alleged that after the divorce, Mr. White contacted and visited Andi infrequently and sporadically and only at the insistence of Andi's paternal grandparents, that he showed Andi little love, affection, or concern even during the marriage, and that he contributed very little to support Andi. Mr. White presented to this Court affidavits challenging Ms. White's claims. Among other things these affidavits allege that after the divorce, Mr. White maintained contact with Andi, sent her gifts, and visited with her frequently, that Andi visited him when he lived out of state, that either he or his parents always paid Andi's child support, and that at the age of fourteen Andi moved to the home of her paternal grandparents and lived with them, apart from her mother, until her death. In view of our resolution of this appeal, we need not resolve the conflicts in the representations of the parties on the issue of abandonment.

2. W.Va.Code, 55–7–6(b) (1989), states:

   "In every such action for wrongful death the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section, shall direct that the remaining net damages be distributed in accordance with the decedent's will or, if there be no will, in

accordance with the laws of descent and distribution as set forth in chapter forty-two [§ 42–1–1 et seq.] of this code."

3. The relevant portion of W.Va.Code, 55–7–7 (1989), states:

   "The personal representative of the deceased may compromise any claim to damages arising under section five [§ 55–7–5] of this article before or after action brought. What is received by the personal representative under the compromise shall be treated as if recovered by him in an action under the section last mentioned.... Upon approval of the compromise, the court shall apportion and distribute such damages, or the compromise agreed upon, after making provisions for those expenditures, if any, specified in subdivision (2), subsection (c), section six [§ 55–7–6(c)(2) ] of this article, in the same manner as in the cases tried without a jury."

4. We note that the statute of descent was substantially amended during the most recent legislative session. The new statute became effective on June 5, 1992.

5. W.Va.Code, 42–2–1, does provide for two exceptions:

   "(a) If the intestate was a married woman, and leave issue surviving, her husband shall

In *Arnold v. Turek, supra,* we discussed the effect of these provisions on our previous wrongful death acts, W.Va.Code, 55-7-6 (1985), and W.Va.Code, 55-7-6 (1982), which gave the trial court or the jury the discretion to direct in what proportion damages recovered under the act should be distributed among three classes of beneficiaries. These classes included, in descending order of preference, (1) the decedent's spouse, children, and other persons dependent upon the decedent; (2) the decedent's parents, brothers, and sisters; (3) such other persons as would inherit under the statutes of descent and distribution. In *Walker v. Walker,* 177 W.Va. 35, 350 S.E.2d 547 (1986), we discussed the distribution provisions of the 1982 act. In the Syllabus of *Walker,* we concluded that where a settlement of the wrongful death claim had been made,

> "[a] trial court may consider the dependency of a decedent's children, the relationship between the decedent and his children, and the relative degree of each child's potential loss of money and services in apportioning a wrongful death award under W.Va.Code § 55-7-6 (Supp.1986)."

In *Arnold v. Turek, supra,* we described at some length the effect of W.Va.Code, 55-7-6 (1989), noting that the 1989 amendments removed any discretion on the part of the jury or the court to distribute the damages equitably. We summarized our conclusions in Syllabus Points 1, as modified, and 2 of *Arnold:*

> "1. The legislature amended W.Va. Code, 55-7-6 and 55-7-7 in 1989. The amendments deleted provisions which specified relatives and dependents who were entitled to share in a wrongful death damage award. The legislature also removed the right of the jury or the court to distribute damages in such amounts and proportions as the [jury or the] court finds to be fair, just and equitable. Instead, the net proceeds of a wrongful death damage award must now pass in accordance with the decedent's will or, if there be no will, in accordance with the laws of descent and distribution.
>
> "2. With regard to the distribution of a wrongful death settlement, W.Va.Code, 55-7-7 (1989), directs a judge to distribute the settlement in accordance with the decedent's will or, if there be no will, in accordance with the laws of descent and distribution. Thus, the legislature has taken away the discretion of the court to allocate a greater share of wrongful death proceeds based on an individual's degree of dependency, relationship, or loss, which existed prior to the 1989 amendments to the Wrongful Death Act."

We concluded that under W.Va.Code, 55-7-6(b) (1989), and W.Va.Code, 55-7-7 (1989), the trial court had no discretion to alter the distribution of a wrongful death settlement on the ground that one beneficiary had shown a greater dependency on the decedent than the others.

### III.

Ms. White first contends that the 1989 wrongful death act is not applicable in this case. She notes that in the most recent legislative session, the wrongful death act was again amended. W.Va.Code, 55-7-6(b) (1992), which became effective on June 5, 1992, provides, in pertinent part:

> "In every such action for wrongful death the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution[.]"

---

be entitled to one third of such surplus, and if she leave no issue, he shall be entitled to the whole thereof;

"(b) If the intestate leave a widow and issue by the same or a former marriage, the widow shall be entitled to one third of such surplus, and if he leave no such issue, she shall be entitled to the whole thereof."

Because the decedent was not married, neither of these exceptions applies here.

Only if none of the named beneficiaries survive the deceased will the court or the jury resort to the will or the statutes of descent and distribution to determine the appropriate distribution of the wrongful death award.[6]

Clearly, these recent amendments restore to the trial judge and the jury the discretion to determine the appropriate distribution of the wrongful death recovery, at least with respect to the named beneficiaries. There is little question that if the 1992 statute were applied, Ms. White's claims for an unequal distribution of the settlement proceeds upon proof of abandonment would be enhanced. Ms. White contends that the 1992 amendments to W.Va.Code, 55–7–6(b), should be retroactively applied in this case.

In *Arnold v. Turek*, we discussed principles of retroactivity with regard to the wrongful death act. In Syllabus Points 4 and 5 of *Arnold*, we stated:

"4. '"A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." Syllabus Point 3, *Shanholtz v. Monongahela Power Co.*, [165 W.Va. 305], 270 S.E.2d 178 (1980).' Syllabus Point 2, *State ex rel. Manchin v. Lively*, 170 W.Va. 655 [672], 295 S.E.2d 912 (1982).

"5. Statutory changes in the manner and method of distributing the proceeds of a judgment or settlement for wrongful death will not be given retroactive effect, and the statute in effect on the date of the decedent's death will control."

In the text of the opinion, we explained the policy underlying Syllabus Point 5: "The basic rationale for this rule is that the cause of action ordinarily accrues and the rights of the beneficiaries are vested on the date of the decedent's death." 185 W.Va. at 411, 407 S.E.2d at 712. (Citation omitted).

There is no dispute that W.Va.Code, 55–7–6(b) (1989), was in effect at the time of Andi White's death. The 1992 amendments upon which Ms. White relies did not become effective until over one month after the case was submitted to this Court for decision on appeal.

Ms. White, however, argues that the terms of the new statute evince a clear legislative intent that it apply retroactively. In particular, Ms. White relies on the provisions of W.Va.Code, 55–7–6(d) (1992), which state, in pertinent part: "The provisions of this section shall not apply to actions brought for the death of any person occurring prior to the first day of July, one thousand nine hundred eighty-eight." Ms. White asserts that the legislature must have intended the 1992 amendments to apply to any wrongful death action instituted on or after July 1, 1988.

We do not believe the language cited is sufficiently explicit to warrant the conclusion urged by Ms. White. First, the provisions relating to the applicability of the 1992 amendments are stated in the negative. If the legislature had truly meant for W.Va.Code, 55–7–6 (1992), to apply retroactively, it could easily have done so by changing only a few words of subsection (d) to make a positive statement to that effect, i.e., that the amendment *shall* apply

---

6. W.Va.Code, 55–7–6(b) (1992), states, in its entirety:

"In every such action for wrongful death the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, sisters, parents and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) of this section. If there are no such survivors, then the damages shall be distributed in accordance with the decedent's will or, if there is no will, in accordance with the laws of descent and distribution as set forth in chapter forty-two of this code. If the jury renders only a general verdict on damages and does not provide for the distribution thereof, the court shall distribute the damages in accordance with the provisions of this subsection."
W.Va.Code, 55–7–7 (1989), was not altered by the 1992 amendments.

to wrongful death actions brought after a specific date. Second, the date used in W.Va.Code, 55–7–6(d) (1992), bears no relationship to the effective date of the 1989 wrongful death act. If, as Ms. White asserts, the intention of the legislature was to wipe out the distribution procedure mandated under the 1989 statute by retroactive application of the 1992 amendments, the later provisions would surely have made reference to the effective date of the prior enactment, June 29, 1989.[7]

In addition, we note that W.Va.Code, 55–7–6(d) (1989), contained a similar provision precluding application of its provisions to any action brought for a death occurring before July 1, 1982.[8] Although we did not explicitly consider the meaning of this provision in *Arnold*, we did state: "There is no language in the 1989 amendments to the Wrongful Death Act which would suggest that the legislature intended to give them retroactive operation." 185 W.Va. at 411, 407 S.E.2d at 712. The legislature was surely aware of our ruling in *Arnold*. If our reading of the statute was wrong with respect to the retroactivity issue, the legislature certainly would have employed a more explicit and positive statement of its intent to make the 1992 amendments retroactive.

The wrongful death in this case occurred in 1989. The settlement of the wrongful death action was reached by the parties and approved by the trial court in June, 1991, nine months before the legislature enacted W.Va.Code, 55–7–6 (1992), and almost one year before the new statute became effective. The trial court confirmed an equal distribution to Andi's parents on August 13, 1991. To give the new statute retroactive effect in these circumstances would stretch the concept of retroactivity beyond any known case or principle. This we decline to do.

We conclude that the language of W.Va.Code, 55–7–6 (1992), does not clearly or by necessary implication evince a legislative intent that its provisions apply retroactively. In accordance with Syllabus Point 5 of *Arnold v. Turek* the rights of the parties must, therefore, be determined by reference to W.Va.Code, 55–7–6 (1989), the statute in effect at the time of Andi White's death.

IV.

Ms. White next argues that our ruling in *Arnold v. Turek* was too restrictive. She notes that the purpose of the wrongful death act is to compensate the beneficiaries for the loss they have suffered as a result of the decedent's death. *Walker v. Walker, supra; Wilder v. Charleston Transit Co.,* 120 W.Va. 319, 197 S.E. 814 (1938); *Swope v. Keystone Coal & Coke Co.,* 78 W.Va. 517, 89 S.E. 284 (1916); *Richards v. Riverside Ironworks,* 56 W.Va. 510, 49 S.E. 437 (1904). Ms. White argues that because the distribution procedure mandated by W.Va.Code, 55–7–6(b) (1989), does not permit consideration of the actual loss of each beneficiary, it is in conflict with the compensatory purpose of the wrongful death act.

In *Arnold v. Turek*, we found the meaning of the 1989 wrongful death act distribution provisions to be clear. It must be remembered that a wrongful death action did not exist at common law and is a creature of the legislature. *See Baldwin v. Butcher,* 155 W.Va. 431, 184 S.E.2d 428 (1971); *Adams v. Grogg,* 153 W.Va. 55, 166 S.E.2d 755 (1969), *overruled on other grounds, Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721 (1976); *Swope v. Keystone Coal & Coke Co., supra.* We are not authorized to alter the provisions of the statute. Thus, in *Arnold v. Turek*, we found that while damages for loss of income and services to the individual beneficiaries could

---

**7.** *See* 1989 W.Va.Acts ch. 1.

**8.** W.Va.Code, 55–7–6(d) (1989), states, in pertinent part: "The provisions of this section shall not apply to actions brought for the death of any person occurring prior to the first day of July, one thousand nine hundred eight-two." This language, if read literally, would suggest

that a wrongful death action brought after July 1, 1982, would be controlled by the provisions of the 1989 act, which did not exist until June 29, 1989. We are at a loss to ascribe any rational meaning to this type of language, much less read in a statement on retroactivity.

be recovered under the 1989 act, these amounts were not payable directly to the individuals who suffered the loss, as under the prior act, but were distributed under the decedent's will or through intestate succession:

> "The only logical conclusion is that while loss of income and services may be proved as an element of damages in a wrongful death action pursuant to W.Va. Code, 55–7–6(c)(1)(B) (1989), for purposes of distribution, such damages are 'net damages' and should be distributed among all beneficiaries who take under the decedent's will or through intestate succession." 185 W.Va. at 411, 407 S.E.2d at 711. (Footnote omitted).

*See also* Syllabus Points 1 and 2, *Arnold v. Turek, supra.*

 It is obvious by the number of changes made to the wrongful death statute in recent years that this is a matter of some interest to the legislature. Where the legislature has spoken with such clarity, as we found in *Arnold v. Turek,* we decline to alter or amend the statute. Thus, we decline to alter *Arnold v. Turek.*

## V.

A further issue raised is whether a parent who abandons a child may participate in a distribution of proceeds recovered for the death of such child. This was discussed in *Swope v. Keystone Coal & Coke Co., supra,* where an eleven-year-old boy was killed while employed in the defendant's mine. The defendant settled with the boy's mother and the guardian of two of his siblings. A wrongful death action was subsequently brought by the administrator of the boy's estate on behalf of the child's father, the preferred beneficiary under the wrongful death act in effect at the time.[9] The defendant alleged that because the father had willfully abandoned the family, he had no right to take under the wrongful death act, and the mother and siblings should be substituted as beneficiaries.

Like the statutes at issue in this case, the wrongful death act discussed in *Swope* had adopted the provisions of the intestacy laws for the purpose of determining the proper distribution of a recovery. The Court in *Swope* noted that the only widely accepted exception to these distribution provisions precluded recovery by a beneficiary whose negligence contributed to the decedent's death. The Court later stated:

> "However unworthy or undeserving the father may be, he takes the benefit of the statute, unless he has been guilty of conduct contributing to the cause of the death. That he is dissipated, profligate and indifferent to his family obligations to such an extent as utterly to preclude any hope of incidental benefit to the wife and children, would not prevent a recovery by the personal representative for his benefit nor substitute them for him as beneficiaries." 78 W.Va. at 524, 89 S.E. at 287.

These statements indicate that a parent who has abandoned his or her child is not precluded by such abandonment from sharing in a recovery in an action for the wrongful death of such child. However, the Court in *Swope* was primarily concerned with the issue of substitution of beneficiaries, a question not raised here. The effect of the above statements is, therefore, in some doubt. *See also In re Estate of Stollings,* 82 W.Va. 18, 95 S.E. 446 (1918).

The issue has been discussed in other jurisdictions under their wrongful death acts. The results vary because of the particular language of the different statutes. In those jurisdictions with distribution provisions similar to W.Va.Code, 55–7–6(b) (1989), courts have held that in the absence of a statute to the contrary, a parent who abandons a child is not precluded from recovering or sharing in a wrongful death recovery where the wrongful death act

---

**9.** The wrongful death act then in effect provided for distribution of proceeds thereunder "to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate." 1913 W.Va. Code ch. 103, § 6. The statutes of descent and distribution provided that the estate go first to the father and "[i]f there be no father, then to the mother and siblings." 1913 W.Va.Code ch. 78, § 1.

mandates distribution of damages recovered thereunder in accordance with the laws of intestate succession. *See, e.g., Crosby v. Corley,* 528 So.2d 1141 (Ala. 1988); *Hotarek v. Benson,* 211 Conn. 121, 557 A.2d 1259 (1989); *Black v. Reynolds,* 109 Idaho 277, 707 P.2d 388 (1985); *Murphy v. Duluth–Superior Bus Co.,* 200 Minn. 345, 274 N.W. 515 (1937); *Brady v. Fitzgerald,* 229 Miss. 67, 90 So.2d 182 (1956) (applying Arizona law); *Avery v. Brantley,* 191 N.C. 396, 131 S.E. 721 (1926); *Anderson v. Anderson,* 211 Tenn. 566, 366 S.W.2d 755 (1963); *Spurling v. Johnson,* 747 S.W.2d 350 (Tenn.App.1987). Typical of the rationale behind these cases is this statement from *Crosby v. Corley,* 528 So.2d at 1143:

> "The legislature, by mandating that wrongful death proceeds be distributed according to the statute of intestate distribution, necessarily perceived that some beneficiaries would be totally unworthy of inheriting. The statutory law of intestate succession is not controlled by, nor conditioned upon, equitable considerations of worthiness, fitness, and misconduct, etc. On the contrary, it is controlled by a set of rules that attempt to dispose of the deceased's property in a way the deceased would have had a will been executed, by recognizing the natural law of consanguinity, or of blood, and the natural affections of a person toward those nearest him in that relationship."

In *Spurling v. Johnson,* 747 S.W.2d at 352, the Tennessee Court of Appeals quoted the following language from *Heggie v. Barly,* 5 Tenn.Civ.App. 78, 82 (1914):

> " '[O]ur statutes providing for recoveries for personal injuries negligently inflicted resulting in deaths, and designating for whose benefit such recoveries may be had are clearly in the nature of statutes providing for the descent and distribution of estates, and we are of opinion that the Court can no more inquire into the worthiness or unworthiness of such beneficiaries in such personal injury cases than they can inquire into the worthiness or unworthiness of those who are designated as beneficiaries of the estates of decedents, and that the Courts cannot deny

relief because of unworthiness in either case unless authorized so to do by some statute.' "

There are some cases which rely on statutes similar to the 1992 wrongful death act, permitting the trial court or the jury to alter the distribution of a wrongful death recovery based on the beneficiaries' degree of loss or dependency, as allowing consideration of the abandonment issue in directing distribution. *See, e.g., Dove v. Carver,* 197 Ga.App. 733, 399 S.E.2d 216 (1990); *Mortensen v. Sullivan,* 3 Ill.App.3d 332, 278 N.E.2d 6 (1972); *Glasco v. Fire & Casualty Ins. Co.,* 709 S.W.2d 550 (Mo.App.1986); *Williams v. Cover,* 74 Or.App. 711, 704 P.2d 548 (1985). In other cases, courts have relied on statutes expressly disqualifying a parent who has abandoned or failed to support a child from recovering or participating in the distribution of damages for the wrongful death of such child. *See, e.g., In re Chernenga's Estate,* 54 Misc.2d 137, 281 N.Y.S.2d 908 (1967); *Williford v. Williford,* 288 N.C. 506, 219 S.E.2d 220 (1975).

We are loathe to interfere with the legislative determination as to those persons who should be entitled to the benefit of this statutorily created right of action, even where it results in injustice. Our role is to interpret the law, not to create it. While we recognize that "harsh inequities caused by the blind application of the distribution statute" may result, nonetheless

> "the legislature must have necessarily recognized that such inequities would occur under the statute. Thus, the trial court was, and this Court is, without the power to conform the statute to its conception of justice under the facts of this case." *Crosby v. Corley,* 528 So.2d at 1144.

Moreover, the distribution procedure mandated by W.Va.Code, 55–7–6(b) (1989), serves a legitimate function. As the Supreme Court of Pennsylvania noted in turning aside a substantive due process challenge to that state's wrongful death act:

> "Incorporation of the Intestate Act into the Wrongful Death Act reduces the potential for intra-family conflict by obviat-

ing the necessity for a jury determination respecting the apportionment of the wrongful death recovery among the beneficiaries. The procedure eases and simplifies the administration of wrongful death actions. It is thus relevant to the purpose of enactment." *Seymour v. Rossman,* 449 Pa. 515, 522, 297 A.2d 804, 808 (1972).

*See also Solomon v. Harman,* 107 Ariz. 426, 489 P.2d 236 (1971).

We conclude that because of the particular limitation on distribution contained in W.Va.Code, 55–7–6(b) (1989), and in the absence of any contrary statutory language, the fact that the wrongful death victim has been abandoned by a parent does not foreclose that parent from sharing in a wrongful death award thereunder. Obviously, this result has been alleviated by the 1992 amendments.

## VI.

For the reasons stated above, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.