**FILED**

**June 2, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0201  *In re:  A.P.*

WALKER, J., concurring.

I concur wholeheartedly with the majority's decision and write separately to make some additional points in support of this well-reasoned opinion.  The majority properly holds that West Virginia Code § 49-4-604(c)(6) (2020) does not permit the termination of parental, guardianship, or custodial rights to a child who is deceased at the time of disposition.  "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."[1]

Giving effect to a statute's plain text and expressed purpose is precisely this Court's role in a system of separated powers.  To the extent that this case presented a tempting opportunity for this Court to adopt its own policy preferences over those expressly chosen by the Legislature, the majority exercised appropriate restraint as

> [t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation.  It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation.  It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal Constitutions.[2]

---

[1] Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

[2] Syl. Pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009).

1

Our analysis begins, and ends, with the text of the statute. When a child abuse and neglect matter proceeds to disposition,[3] a circuit court may select from the various dispositional alternatives listed in West Virginia Code § 49-4-604(c):

(c) *Disposition decisions*. The court shall give precedence to dispositions in the following sequence:

(1) Dismiss the petition;

(2) Refer the child, the abusing parent, the battered parent or other family members to a community agency for needed assistance and dismiss the petition;

(3) Return the child to his or her own home under supervision of the department;

(4) Order terms of supervision calculated to assist the child and any abusing parent or battered parent or parents or custodian which prescribe the manner of supervision and care of the child and which are within the ability of any parent or parents or custodian to perform;

(5) Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court. . . .

(6) Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship

---

[3] In this case Petitioner (A.P.'s mother) entered a voluntary stipulation of adjudication admitting that she neglected the child by subjecting him to drug abuse. Petitioner tested positive for THC, barbiturates, and alcohol levels consistent with heavy drinking during her pregnancy. Shortly after adjudication, the infant child A.P. died, and the case proceeded to disposition the following year.

2

rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency. The court may award sole custody of the child to a nonabusing battered parent. . . .

The majority rightly concludes that in determining the appropriate disposition in an abuse and neglect proceeding, a circuit court may select from the first two dispositional alternatives when the only child who is the subject of the petition is no longer living. It may: 1) dismiss the petition outright under disposition one, or 2) refer the abusing parent, battered parent or other family member to a community agency for assistance and then dismiss the petition under disposition two. The other dispositional alternatives (three through six) are simply not applicable when the only child who is named in the petition is deceased as they concern the placement and future welfare of the child.[4] Unfortunately, those matters are no longer relevant.

Addressing the narrow issue presented, the majority correctly finds that the circuit court erred in terminating Petitioner's parental rights. This dispositional alternative, six, must be supported by both a finding that there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as well as a finding that

---

[4] *See In re Isaiah A.*, 228 W. Va. 176, 182, 718 S.E.2d 775, 781 (2010) (stating the best interests of the child is the "polar star" by which decisions that affect children must be made).

3

termination is "necessary for the welfare of the child."[5]  By demonstrating that Petitioner refused to participate with services to address her substance abuse issues, the Department of Health and Human Resources (DHHR) met its burden of proof on the first prong of the statute.  But it could not meet the second prong because terminating Petitioner's parental rights is not necessary for the deceased infant's welfare.

Unable to anchor their preferred reading in the statutory text, the DHHR and the child's guardian ad litem seek refuge in extratextual considerations they believe support the circuit court's decision in this case.  For instance, they argue that in the case of *In re I.M.K.*, this Court at least implied that disposition, including termination of parental rights, may follow regardless of the status of the child(ren).[6]  They ask us to find support in the

---

[5] W. Va. Code § 49-4-604(c)(6).

[6] In *In re I.M.K.*, 240 W. Va. 679, 815 S.E.2d 490 (2018), this Court held that circuit courts may proceed to adjudicate parents as abusive/neglectful when those children die as a result of their abuse:

> When an infant child is born alive and becomes the subject of an abuse and neglect petition, but the child dies during the pendency of the abuse and neglect proceedings, the matter may proceed to an adjudicatory hearing, and the presiding circuit court may make findings of fact and conclusions of law as to whether the subject child is an abused and/or neglected child and whether the respondents are abusing and/or neglectful as contemplated by W. Va. Code § 49-4-601(i) (2015) (Repl. Vol. 2015).  The circuit court's findings and conclusions regarding the existence of abuse and/or neglect must, however, be based upon the conditions alleged in the abuse and neglect petition and any amendments thereto.

*In re I.M.K.*, 240 W. Va. 679, 815 S.E.2d 490, syl. pt. 2.

4

overall purpose of abuse/neglect proceedings as well as the circuit court's rationale that termination of Petitioner's parental rights can possibly give A.P.'s "life meaning and importance well beyond his tender months." They also point to collateral consequences flowing from a termination of parental rights such as the possible protection of any future children born to Petitioner citing the "aggravated circumstances" statute.[7] But those considerations cannot prevail against Petitioner's argument that dispositional alternative six is no longer relevant when the sole child who is the subject of the petition is deceased. The short answer to the DHHR and the guardian's line of reasoning is that the Legislature did not write the statute that way.

Some may view today's decision as unjust or callous considering the tragic death of the infant child. But the available dispositional alternatives listed in the West Virginia Code and the public policy concerns raised in this case are matters dedicated exclusively to the wisdom of our Legislature, and I trust that it will act to change the statute if the current plain language does not reflect its true intent. But judges should not add to, remodel, or reformulate statutory terms based on our own views; we must respect our proper constitutional role.[8]

---

[7] *See* W. Va. Code § 49-4-604(c)(7)(C) ("For purposes of the court's consideration of the disposition custody of a child pursuant to this subsection, the department is not required to make reasonable efforts to preserve the family if the court determines: . . . (C) The parental rights of the parent to another child have been terminated involuntarily[.]").

[8] As Justice Newsom stated,

5

It is noteworthy that our Legislature has specifically addressed one significant collateral consequence in this area of law: abusive or neglectful parents' ability to inherit from their deceased children's estates—often sizable in the event of a wrongful death suit.[9] West Virginia Code § 42-1-11 (2019) sets forth circumstances where a parent

> my job, as a judge, isn't to dispense "justice," in the abstract, as I see fit. My role in our tripartite form of government is, as relevant here, to faithfully interpret and apply the laws that Congress has passed in accordance with the precedents that the Supreme Court has established. Sometimes I'll like the results; sometimes I won't. But adherence to the rule of law requires a certain outcome-blindness—or at least outcome-agnosticism.

*In re Wild*, 994 F.3d 1244, 1275-76 (11th Cir. 2021) (Newsom, J., concurring).

[9] *See* Daniel Pollack & Gary L. Popham, Jr., *"Wrongful Death" of Children in Foster Care*, 31 U. La Verne L. Rev. 25 (2009) (surveying wrongful death cases filed in various states involving the death of children in foster care including a $20 million verdict in the case of a baby whose death was linked to negligent foster care).

In syllabus point two of *White v. Gosiene*, 187 W. Va. 576, 420 S.E.2d 567 (1992), this Court recognized that damages recovered in a wrongful death action are distributed in accordance with the laws of intestate succession when the decedent had no will:

> "With regard to the distribution of a wrongful death settlement, W. Va. Code, 55-7-7 (1989), directs a judge to distribute the settlement in accordance with the decedent's will or, if there be no will, in accordance with the laws of descent and distribution. Thus, the legislature has taken away the discretion of the court to allocate a greater share of wrongful death proceeds based on an individual's degree of dependency, relationship, or loss, which existed prior to the 1989 amendments to the Wrongful Death Act." Syllabus Point 2, *Arnold v. Turek,* 185 W. Va. 400, 407 S.E.2d 706 (1991).

6

may be barred from inheriting from his or her abused/neglected child under our laws of intestate succession:

> (a) A parent is barred from inheriting from or through a child of the parent if: (1) The parent's parental rights were terminated by court order and the parent-child relationship has not been judicially reestablished; or (2) the child died before reaching 18 years of age and there is clear and convincing evidence that immediately before the child's death the parental rights of the parent could have been terminated under the law of this state other than this article on the basis of nonsupport, abandonment, abuse, neglect, or other actions or inactions of the parent toward the child.[10]

By providing that a parent may be barred from inheriting from an abused/neglected child when "there is clear and convincing evidence that *immediately before the child's death* the parental rights of the parent could have been terminated[,]"[11] the Legislature may have expressed its recognition that courts lack the statutory authority to terminate parental rights to a child posthumously under West Virginia Code § 49-4-604(c)(6). So, it addressed public policy concerns in the area of intestate succession and granted the courts statutory authority to bar abusive/neglectful parents from inheriting in the event they maltreated their child before his or her untimely death.[12]

---

[10] W. Va. Code § 42-1-11, in part. We note that this statute is identical to Art. II, § 2-114 of the 2010 Uniform Probate Code.

[11] *Id.* (Emphasis added).

[12] *See* Joshua Hamlet, *Neglecting Responsibilities: The Uniform Probate Code's Failure to Address Child Maltreatment and Poverty*, 28 J.L. & Pol'y 195 (2019)

7

For these reasons, I firmly believe that our holding is the best representation of Legislative intent based on the relevant statute and concur in the judgment of the Court reversing the order of the circuit court.

---

(discussing cases and stating that Uniform Probate Code has been successful in some circumstances in fulfilling its purpose of barring abusive/neglectful parents from inheriting from the children they mistreated).